*Attorney Grievance Commission v. Ross D. Hecht*, Misc. Docket AG No. 97, September Term, 2016.  Opinion by Getty, J.

**ATTORNEY DISCIPLINE — SANCTIONS — INDEFINITE SUSPENSION —** The Court of Appeals indefinitely suspended with the right to petition for reinstatement after twelve months from the date of this opinion an attorney who took on representation of a client but was then suspended from the practice of law due to an unrelated matter.  While representing the client, the attorney failed to communicate to his client that he was suspended, made misrepresentations to the client about his suspension, continued to render legal assistance on behalf of the client, and made misrepresentations to Bar Counsel during the investigation.  These actions violated the Maryland Lawyers' Rules of Professional Conduct Rules 1.1 (Competence), 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.16(a) and (d) (Declining or Terminating Representation), 3.2 (Expediting Litigation), 3.3 (Candor Toward the Tribunal), 3.4(d) (Fairness to Opposing Party and Attorney), 4.1 (Truthfulness in Statements to Others), 5.5(a) and (b) (Unauthorized Practice of Law), 8.1 (Bar Admission and Disciplinary Matters), and 8.4(a), (b), (c), and (d) (Misconduct).

Circuit Court for Prince George's County
Case No.: CAE17-06394
Argued: February 5, 2018

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 97

September Term, 2016

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

ROSS D. HECHT

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Getty, J.
Greene and Watts, JJ., dissent.

_____

Filed: May 10, 2018

This attorney discipline case involves an attorney who took on representation of a client but was then suspended from the practice of law due to an unrelated matter. While representing the client, the attorney failed to communicate to his client that he was suspended, made misrepresentations to the client about his suspension, continued to render legal assistance on behalf of the client, and made misrepresentations to Bar Counsel during the investigation.

On February 23, 2017, the Attorney Grievance Commission of Maryland ("Bar Counsel") filed a Petition for Disciplinary or Remedial Action ("Petition") alleging that Ross D. Hecht ("Hecht") had violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC").[1] The Petition alleged that Hecht, during representation of Diana Lynn Crummitt ("Lynn Crummit"), had violated the following rules of the MLRPC: 1.1 (Competence); 1.2(a) (Scope of Representation); 1.3 (Diligence); 1.4(a); and (b) (Communication); 1.16(a) and (d) (Declining or Terminating Representation); 3.2 (Expediting Litigation); 3.3(a) (Candor Toward the Tribunal); 3.4(c) and (d) (Fairness to Opposing Party and Attorney); 4.1 (Truthfulness in Statements to Others); 5.5 (Unauthorized Practice of Law); 8.1(a) (Bar Admissions and Disciplinary Matters); and 8.4(a), (b), (c), and (d) (Misconduct).

---

[1] Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and moved to Title 19, Chapter 300 of the Maryland Rules. This opinion refers to the MLRPC, not the MARPC, because all relevant conduct took place before July 1, 2016.

By Order dated March 1, 2017, we designated Judge John P. Davey ("the hearing judge") of the Circuit Court for Prince George's County to conduct a hearing concerning the alleged violations and to provide findings of fact and recommended conclusions of law. Md. Rule 19-722(a). The hearing took place on August 30 and 31, 2017 ("evidentiary hearing"). At the hearing, Bar Counsel introduced into evidence various documentary exhibits, including Hecht's correspondence with his client, Lynn Crummitt. Several witnesses, including Hecht and Lynn Crummitt, testified.

The hearing judge issued a memorandum opinion in which he made detailed findings of fact and recommended conclusions of law to this Court on October 25, 2017. In his recommended conclusions of law, the hearing judge concluded that Hecht violated MLRPC 1.1, 1.3, 1.4, 1.16(a) and (d), 3.2, 3.3, 3.4, 4.1, 5.5, 8.1(a), and 8.4(a), (b), and (c).

Both parties filed exceptions to the hearing judge's findings of fact and recommended conclusions of law. Bar Counsel excepts "to the trial court's failure to conclude that [Hecht] . . . violated Rules 8.1(a) and 8.4(c) during the course of the Bar Counsel's disciplinary investigation, and that the [Hecht's] conduct, taken as a whole, violated Rule 8.4(d)." Bar Counsel recommends that we disbar Hecht. Hecht excepts extensively to the trial judge's factual findings as well as his recommended conclusions of law regarding MLRPC 3.3, 3.4, 4.1, 5.5, 8.1, and 8.4. Hecht requests that we continue his indefinite suspension.[2] On February 5, 2018, we heard oral argument in this matter. For

---

[2] Hecht has been indefinitely suspended since June 15, 2013. *Attorney Grievance Comm'n v. Hecht*, 431 Md. 443 (2013).

the reasons explained below, we indefinitely suspend Hecht with the right to petition for reinstatement after twelve months from the date of this opinion.

## BACKGROUND

We summarize the hearing judge's factual findings below.

*Beginning of Representation*

Hecht was admitted to the Bar of this Court on June 23, 1994. In late September 2009, Lynn Crummitt was injured in a motor vehicle accident in Frederick County, Maryland. In early 2010, Lynn Crummitt and her husband, Irving J. Crummitt ("Jay Crummitt") (collectively, "the Crummitts") retained Hecht to represent them in a motor tort action resulting from the accident on a contingency basis. Hecht filed a complaint on behalf of the Crummitts in the Circuit Court for Frederick County. Defendants' attorney, Keith M. Bonner ("Bonner"), filed an answer to the complaint and subsequently sent discovery requests to Hecht on May 9, 2013.

*Hecht's Suspension*

On May 16, 2013, we indefinitely suspended Hecht from the practice of law with the right to petition for reinstatement after six months on a matter unrelated to the representation of the Crummitts. Hecht's suspension began on June 15, 2013.

At the evidentiary hearing in the Crummitts matter, the hearing judge found that "[Hecht], upon his suspension, turned off his office phones and cable and physically took the sign off the door of his law office. [Hecht] took these steps with the intent of shutting down his law practice" and "[a]lthough [Hecht] attempted to notify his clients in person, over the telephone and in writing that he had been suspended from the practice of law in

3

Maryland, [Hecht] did not withdraw his appearance with the court from the Crummitts' case."

The hearing judge noted that Hecht believed he had notified the Crummitts of his suspension by email, but that he could not confirm that the email had been sent. Although Hecht did not specifically withdraw his appearance with the circuit court from the Crummitts' case, he did notify the U.S. District Courts in both Maryland and the District of Columbia that he had been indefinitely suspended from the practice of law in Maryland.

*Hecht's Continued Representation*

When neither Hecht nor the Crummitts responded by the discovery deadline, Bonner sent a letter dated July 1, 2013 to Hecht's law office stating that if discovery responses were not received within ten days that Bonner would file a motion to compel with the court. In his review of the discovery dispute, the hearing judge found that Hecht did not realize until August 6, 2013 that the "Crummitts had not retained new counsel or responded to the discovery requests," which "upset" and "worried" Hecht. The discovery responses were not received within the allotted time, and Bonner filed a motion to compel discovery. The circuit court granted Bonner's motion to compel on August 28, 2013 and issued an order requiring the Crummitts to provide discovery responses within ten days.

Lynn Crummitt asked Hecht for an update in the status of her case in early September 2013. Responding to Lynn Crummitt's text messages, Hecht did not disclose his suspension but did suggest that she meet with Peter Fayne ("Fayne") to gauge Fayne's willingness to serve as the Crummitts' attorney. This was Hecht's first attempt at finding alternative counsel for the Crummitts. Hecht, claiming to be acting as an informal advisor

4

rather than a legal practitioner, drafted the Crummitts' overdue answer to interrogatories, response to document requests, and certificate regarding discovery on approximately September 19, 2013. Hecht then emailed drafts of these discovery responses to Lynn Crummitt for her review.

The next day, Heidi Hecht, wife of Respondent, followed up with Lynn Crummitt by text message to inquire whether Hecht had permission to sign the Crummitts' names on the discovery responses. Hecht believed he had permission to sign on behalf of the Crummitts, for these and future legal documents, because Heidi Hecht asked Lynn Crummitt, "Can Ross sign your signatures and send it in?" and Lynn Crummitt responded, "Yes he can." After receiving Lynn Crummitt's approval, Hecht signed and emailed the Crummitts' discovery responses to Bonner on September 30, 2013. In the same email, Hecht apprised Bonner of his suspension from the practice of law. The hearing judge found that the text messages were ambiguous as to "which documents Lynn Crummitt was giving permission for [Hecht] to sign and whether Lynn Crummitt was giving [Hecht] permission to sign for Lynn Crummitt or both Lynn and Jay Crummitt."

On October 22, 2013, Hecht recommended that Lynn Crummitt request an extension since the discovery deadline was the following day and there was an outstanding request for records from opposing counsel. Hecht drafted a request for an extension of the discovery deadline. The hearing judge found that, without the knowledge or consent of the Crummitts, "[Hecht] drafted a request to the court . . . on the Crummitts' letterhead" and signed their names.

Bonner filed a motion to continue the scheduling order, pre-trial conference, and trial dates on October 29, 2013. In this motion, Bonner also informed the circuit court of Hecht's suspension from the practice of law in Maryland. Because Hecht was suspended, Bonner also sent a copy of the motion to the Crummitts. Thus, the Crummitts first learned of Hecht's suspension when they received this motion directly from Bonner. At the evidentiary hearing, Lynn Crummitt testified that when confronted about his suspension, Hecht responded that he avoided telling her because he did not want to increase her stress level, that his suspension was a "slap on the wrist," and that he would be reinstated prior to her trial. After Lynn Crummitt confronted Hecht about his suspension, Hecht requested that she forward all correspondence related to her case to him.

Hecht attended a status conference on December 4, 2013 for the Crummitts' case. At this and all future court proceedings involving the Crummitts' case, Hecht sat in the gallery in support of Lynn Crummitt and did not address the court or step behind the bar of the court. Previous to the status conference, Hecht had informed Lynn Crummitt that he "couldn't go in front of the judge" but that he would sit close enough in the gallery that "if [she] had any problems, he would tell [her] what to say." At the status conference, Lynn Crummitt told Judge Dwyer, "I didn't realize [Hecht] was gonna be suspended so I have been trying to get another attorney." Lynn Crummitt also notified Judge Dwyer that she had an appointment with a new attorney. Bonner informed the court that the Crummitts had failed to respond fully to discovery requests. Judge Dwyer rescheduled the status conference to December 11, 2013. Judge Dwyer indicated that an updated scheduling order would be entered after the Crummitts retained new counsel.

Following the status conference, Hecht made a second attempt to secure new counsel by recommending Robert Fiore ("Fiore") at the law firm of Miller & Zois. Lynn Crummitt met with Fiore who was noncommittal at the meeting and said he would discuss the case with his partners. Afterwards, Miller & Zois sent a letter to Hecht stating they would only agree to take the case under certain conditions related to their malpractice liability. The hearing judge found that Hecht informed Lynn Crummitt that Miller & Zois declined the representation even though Miller & Zois had agreed to take the case if certain liability conditions were met.

At the rescheduled status conference on December 11, 2013, Lynn Crummitt appeared while Hecht again sat in the gallery. Bonner moved for dismissal during the conference based on the Crummitts' failure to comply with discovery requests. Lynn Crummitt responded that she would provide Bonner with additional documents. Judge Dwyer deferred ruling on the motion and scheduled a hearing for January 2, 2014.

On the morning of the hearing on January 2, 2014, Hecht attempted for the third time to secure the Crummitts with new counsel. He arranged a meeting between Aaron Blank ("Blank"), an attorney with Fayne's law office, and Lynn Crummitt. With Hecht in the gallery, Blank attended the hearing but told Judge Dwyer that he could not represent Lynn Crummitt in her lawsuit unless more time was granted for discovery and the trial was postponed. While Blank did not formally enter his appearance, he verbally requested that the court reopen discovery in the case. Bonner countered that the case should be dismissed because he still had not received the required discovery materials from the Crummitts.

7

Judge Dwyer reserved on Bonner's prior motion to dismiss and scheduled trial for January 21, 2014.

After this hearing, Hecht drafted Plaintiffs' supplemental discovery responses and emailed them to Lynn Crummitt for her review. Hecht signed Lynn Crummitt's name on both documents. Hecht also drafted two certificates regarding discovery and signed them without allowing Lynn Crummitt an opportunity to review the documents. Hecht sent the documents to Bonner and delivered the discovery materials on electronic media to the circuit court.

Before the trial, Blank communicated to Hecht that he could not become counsel for the Crummitts until his firm talked to the expert that Hecht had been consulting with and thus, Blank would not attend the trial on January 21, 2014. Further, Blank stated that Hecht did not file expert identification which precluded calling any expert witnesses at trial. At the January 21, 2014 trial, Hecht misinformed Lynn Crummitt that Blank would not be in attendance due to snow. With Hecht in the gallery, Lynn Crummitt relied on Hecht's false information and informed the court that Blank's absence was due to snow. In response, the circuit court denied Bonner's motion to dismiss and issued an amended Scheduling Order setting a trial date for May 2014.

Thereafter, Hecht drafted twelve discovery documents for the Crummitts during March 2014. Without showing these documents to the Crummitts, Heidi Hecht signed the documents on behalf of the Crummitts. Hecht sent the Crummitts' discovery documents to Bonner and filed them with the circuit court. In response, Bonner filed a motion to compel the Crummitts' complete discovery responses and sent a motion indicating that

8

Bonner intended to depose the Crummitts in early April 2014. The Crummitts forwarded both motions to Hecht. Though Lynn Crummitt alerted Hecht that she would be unable to be deposed on the date specified by Bonner, Hecht did not inform Bonner of Lynn Crummitt's unavailability until after the deposition was scheduled to begin.

Bonner again moved to have the case dismissed in early April 2014. In response, Hecht drafted a motion to continue trial and sent it to Lynn Crummitt for review. Hecht signed Lynn Crummitt's name and filed the motion with the circuit court in late April 2014. After submitting this motion, Hecht recommended that Lynn Crummitt meet with Elizabeth Cawood ("Cawood") to see if Cawood would be willing to enter as counsel in her case. This was Hecht's fourth and final attempt to secure new counsel for the Crummitts. After an initial meeting, Cawood's law firm partner decided that the firm should decline representation. When Hecht relayed this news to Lynn Crummitt, she terminated his representation. On May 14, 2014, the court granted Bonner's motion to dismiss and dismissed the Crummitts' case with prejudice.

The hearing judge recognized that Hecht was remorseful and had admitted his mistakes in the Crummitts' case. Additionally, the hearing judge concluded that Hecht made "numerous unsuccessful efforts to assist Lynn Crummitt in retaining a new attorney." The hearing judge also acknowledged that Hecht "paid $30,000.00 of his personal funds in money damages to the Crummitts as restitution for the Crummitts' lawsuit being dismissed." Finally, the hearing judge noted that Joseph Ruddy, Esq., an Assistant State's Attorney for Prince George's County, Judge C. Philip Nichols, Jr. of the Circuit Court for

9

Prince George's County, and Judge Leo Green, Jr. of the Circuit Court for Prince George's County each testified to Hecht's competence and truthfulness.

## Standard of Review

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. *See* Md. Rule 19-741(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 588 (2016) ("This Court reviews for clear error a hearing judge's findings of fact." (Citations omitted)); Md. Rule 19-741(b)(1) ("The Court of Appeals shall review *de novo* the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. *See* Md. Rule 19-727(c) ("Bar Counsel has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

If exceptions to the findings of fact are filed, the Court "shall determine whether the findings of fact have been proved by the requisite standard of proof set out in Rule 19-727(c)." Md. Rule 19-741(b)(2)(B); *See Attorney Grievance Comm'n v. Mahone*, 435 Md. 84, 104 (2013).

## DISCUSSION

*A. Exceptions to the Hearing Judge's Findings of Fact*

Bar Counsel does not except to any of the hearing judge's findings of fact. Hecht notes several exceptions to the hearing judge's factual findings that primarily argue for the inclusion of additional information instead of disputing specific findings.

First, Hecht excepts to the hearing judge's findings of fact and requests to add the fact that after his suspension, he did not take on new clients and he referred prospective and existing clients to other attorneys. Further, Hecht believed that his appearance in criminal cases had been stricken by operation of law, and thus he did not check the mail at his closed office for sixty days. Although the hearing judge found that Hecht discovered the Crummitts had not retained new counsel on August 6, 2013, Hecht contends that he did not realize the Crummitts had not retained new counsel or responded to discovery until September 18, 2013. These assertions are supported by Hecht's testimony and because Bar Counsel does not dispute Hecht's testimony as it relates to these exceptions, we sustain the exceptions.

Second, Hecht excepts to the hearing judge's findings of fact and requests to add facts regarding his attempts to secure new counsel for the Crummitts. Specifically, after his suspension, he contacted and facilitated communication by Lynn Crummitt with four attorneys:

1. Peter Fayne. After communicating in person and by text message on May 31, 2013, Hecht believed that Fayne would enter his appearance in the Crummitts' case.

2. Robert Fiore and the law firm Miller & Zois. At the December 11, 2013 status conference, Lynn Crummitt told Judge Dwyer that she had been in communication with Fiore and Fayne about representation and that both attorneys needed a continuance in order to join the case.

11

3. Aaron Blank. Lynn Crummitt represented to Judge Dwyer that she had an attorney, referring to Blank, with her at the January 2, 2014 hearing.

4. Beth Cawood. When Cawood declined representation of Lynn Crummitt, Hecht stated that he had found another attorney willing to assist the Crummitts.

These assertions are supported by Hecht's testimony and because Bar Counsel does not dispute this testimony as it relates to these exceptions, we sustain the exceptions.

Third, Hecht excepts to the factual findings regarding the date that he notified the Crummitts of his suspension. His exception states that "on approximately September 18, 2013, Hecht told Lynn Crummitt that he was suspended, that he would assist her in fending off the then-present motion to dismiss, and that Lynn had to hire another attorney, 'Peter or someone.'" Lynn Crummitt testified that at no point during these September 18, 2013 communications did Hecht admit he was suspended from the practice of law. Lynn Crummitt stated that Hecht mentioned Fayne to her, explaining that Hecht wanted Fayne involved because he "was a very successful personal injury attorney" and that her case "needed a big firm like his for their clout." Due to Lynn Crummitt's testimony, we cannot conclude that the hearing judge erred in determining the date that he told Lynn Crummitt he was suspended. Thus, Hecht's exception as to when he told Lynn Crummitt that he was suspended is overruled.

Fourth, Hecht excepts to the hearing judge's findings of fact regarding the authority for him to sign documents on behalf of the Crummitts. Hecht avers that he had the authority to sign the Crummitts' name on various pleadings and documents after the text message conversation between Hecht's wife and Lynn Crummitt and that Hecht

12

believed he had the authority to execute certain documents due to his correspondence with Lynn Crummitt dated September 20, 2013 and December 31, 2013. While this assertion is supported as to the documents referenced in the September 20, 2013 and December 31, 2013 communications, it is not clear or reasonable that Hecht had continuing permission to sign the Crummitts' documents before and after these communications. As such, Hecht's exception is sustained to the documents discussed during the September 20, 2013 and December 31, 2013 communications, but the exception is overruled in regard to any documents in which Hecht did not affirmatively ask the Crummitts' permission to sign.

### B. Conclusions of Law

Bar Counsel excepts to the hearing judge's failure to find that Hecht violated MLRPC 8.1(a) and 8.4(c) during the course of the Bar Counsel's disciplinary investigation, and that Hecht's conduct, taken as a whole, violated MLRPC 8.4(d). Hecht excepts to the hearing judge's conclusions of law regarding MLRPC 3.3, 3.4, 4.1, 5.5, 8.1, and 8.4. Based upon our independent review of the record, we sustain Bar Counsel's exceptions as to MLRPC 8.1(a), 8.4(c), and 8.4(d), overrule Hecht's exceptions to the hearing judge's conclusions of law, and uphold the rest of the hearing judge's conclusions of law.

### MLRPC 1.1, 1.3, 3.2, and 3.4

The hearing judge found Hecht "failed to timely and adequately respond to discovery requests on behalf of the Crummitts," ultimately "resulting in their case being dismissed with prejudice," violating MLRPC 1.1, 1.3, 3.2, and 3.4. MLRPC 1.1 requires that an attorney "provide competent representation to a client. Competent representation

13

requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.3 requires that a lawyer must also "act with reasonable diligence and promptness in representing a client." Conduct which violates MLRPC 1.1 will often also violate MLRPC 1.3. *See Attorney Grievance Comm'n v. McCulloch*, 404 Md. 388, 398 (2008). Under MLRPC 3.2, a lawyer is required to "make reasonable efforts to expedite litigation consistent with the interests of the client." MLRPC 3.4(d) requires that a lawyer not "fail to make reasonably diligent effort to comply" with an opposing party's discovery request. Hecht excepts to the hearing judge's finding that he violated MLRPC 3.4(d).

While we acknowledge Hecht's many attempts to find new counsel for the Crummitts, Hecht repeatedly failed to comply with discovery deadlines. Hecht's involvement in the lawsuit, both before and after the Crummitts realized he was suspended, delayed the trial unnecessarily and ultimately caused the case to be dismissed. We conclude that these facts display a lack of competent representation, diligence, and expedience. Therefore, we agree with the hearing judge and conclude that Hecht's conduct violated MLRPC 1.1, 1.3, 3.2, and 3.4(d) and overrule Hecht's exception.

### MLRPC 1.4 and 1.16

MLRPC 1.4 provides, in part:

(a) A lawyer shall:
    (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
    (2) keep the client reasonably informed about the status of the matter;
    (3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

MLRPC 1.16(a) states:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law:

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or

(3) the lawyer is discharged.

MLRPC 1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

The hearing judge found Hecht in violation of MLRPC 1.4 and 1.16 "because he failed to specifically notify the Crummitts that he had been suspended from the practice of law and could no longer act as their attorney." Hecht was suspended on May 16, 2013, and the suspension began on June 15, 2013. The Crummitts did not know that Hecht, who acted as though he was still an active attorney, had been suspended until October 29, 2013. Further, they only became aware of Hecht's suspension due to Bonner sending a motion directly to the Crummitts. Even after the Crummitts learned that Hecht was suspended, Hecht failed to affirmatively assert to the

15

Crummitts that he was barred from providing legal services, such as drafting legal documents, or rendering legal advice. Based upon these facts, the hearing judge found that Hecht was not forthcoming about his suspension or his inability to practice law when suspended. Moreover, Hecht's lack of candor regarding his professional status exacerbated the problems facing the Crummitts in pursuing their lawsuit. Accordingly, we agree with the hearing judge and hold that Hecht's conduct violated MLRPC 1.4(a), 1.4(b), 1.16(a), and 1.16(d).

**MLRPC 3.3, 4.1, and 5.5**

Hecht excepts to the hearing judge's finding that he violated MLRPC 3.3, 4.1, and 5.5. The hearing judge found Hecht sent pleadings and discovery responses to the Court and Bonner "purported to be prepared by the Crummitts themselves that in fact were prepared and signed by [Hecht]" and that Hecht "was untruthful with the Crummitts in failing to explain his suspension," violating MLRPC 3.3 and 4.1. Because of these actions, the hearing judge also concluded that Hecht violated MLRPC 5.5. Though he does not specifically refer to MLRPC 3.3, 4.1, and 5.5, Hecht argues that "he attempted to informally" assist the Crummitts which was "well-intentioned but inartfully executed."

The hearing judge concluded that Hecht "misled his client by alleging Aaron Blank would not appear at the January 21, 2014 court hearing due to inclement weather and Lynn Crummitt repeating the assertion to the court." According to his testimony, Hecht knowingly misrepresented to Lynn Crummitt in an effort to reduce her stress. MLRPC 3.3(a) states that an attorney must not "make a false statement of fact or law to a tribunal." Regardless of his reasoning, Hecht made a false statement to Lynn Crummitt who, acting

16

on Hecht's advice and information, unintentionally informed the circuit court of a misrepresentation upon which the circuit court relied. The record is clear that Hecht's conduct violated MLRPC 3.3 and therefore, we overrule Hecht's exception.

Contrary to his assertion, Hecht's actions rose to the level of performing legal tasks rather than, as Hecht argues, informal, non-legal assistance. In certain instances, Hecht would sign the Crummitts' signatures on documents he drafted and submit the legal documents to the circuit court or opposing party even though he was suspended. MLRPC 5.5 forbids an attorney from engaging in the practice of law "in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction" and forbids a suspended attorney from "hold[ing] out to the public" that the attorney is authorized to practice law. By not affirmatively telling the Crummitts that he was suspended, Hecht held himself out to be an attorney authorized to practice law in Maryland. Hecht's suspension combined with his admission that he drafted various discovery documents on the Crummitts' behalf lead to the inescapable conclusion that Hecht participated in the unauthorized practice of law. MLRPC 4.1 states that a lawyer must not "make a false statement of material fact or law to a third person." Hecht was not honest in his communications with the Crummitts, opposing counsel, or the circuit court and misrepresented the source of the Crummitts' discovery responses to opposing counsel and the circuit court. Therefore, we agree with the hearing judge and conclude that this conduct violated MLRPC 4.1, 5.5(a), and 5.5(b). For these reasons, we overrule Hecht's exceptions.

**MLRPC 8.1 and 8.4**

17

Bar Counsel excepts to the hearing judge's failure to conclude that Hecht violated MLRPC 8.1(a), 8.4(c), and 8.4(d) based upon Hecht's alleged misrepresentations to Bar Counsel during the disciplinary investigation and Hecht's overall conduct. Specifically, Bar Counsel asserts that Hecht violated MLRPC 8.1(a) and 8.4(c) "by knowingly and intentionally testifying falsely that: (a) he notified the Crummitts of his indefinite suspension; (b) he simply 'assisted' Lynn Crummitt in drafting discovery materials and pleadings; and (c) he had obtained the Crummitts' authorization to affix their signatures to all of the documents." Hecht excepts generally to the hearing judge's finding that he violated MLRPC 8.1 and 8.4.

MLRPC 8.1(a) requires that a lawyer involved in a disciplinary matter must not "knowingly make a false statement of material fact." The hearing judge found that Hecht violated MLRPC 8.1(a) based on his submission of an affidavit to Bar Counsel in which he "misrepresented to Bar Counsel that he had notified the Crummitts of his suspension." The hearing judge additionally noted that Hecht "had not notified [the Crummitts] and continued to give [the Crummitts] legal advice." The hearing judge recognized that "Mr. Hecht testified at the evidentiary hearing that he did email the Crummitts the suspension notice; however, he was uncertain if the letter was actually transmitted and took no follow-up steps." In his affidavit to Bar Counsel, Hecht stated that his email had been sent to the Crummitts, giving them notification of his suspension. While Hecht asserts that he believed his email to the Crummitts had been submitted, his subsequent actions, including providing the Crummitts with legal services and acting evasively when questioned by the Crummitts about his suspension, belie this claim. As such, we believe clear and convincing

evidence supports the hearing judge's conclusion that Hecht "knowingly and intentionally" attempted to deceive Bar Counsel in his submission of an affidavit to Bar Counsel. Thus, we find that Hecht violated MLRPC 8.1(a) for this issue, and we overrule Hecht's exception and sustain Bar Counsel's exception.

Hecht violated MLRPC 8.1(a) by testifying falsely that he only "assisted" Lynn Crummitt in drafting discovery materials and pleadings. As we have discussed previously, Hecht's actions clearly rose to the practice of law. The Crummitts did nothing other than review or allow Hecht to submit the items he drafted. As such, Hecht violated MLRPC 8.1(a) for "knowingly and intentionally" testifying falsely that he only "assisted" Lynn Crummitt in drafting discovery materials and pleadings, and we overrule Hecht's exception and sustain Bar Counsel's exception.

Finally, clear and convincing evidence supports the hearing judge's conclusion that Hecht lied under oath that the Crummitts granted Hecht the ability to sign and submit documents on their behalf. While the September 20, 2013 text message communication between Heidi Hecht and Lynn Crummitt granted Hecht the ability to sign the Crummitts' signatures for those particular interrogatories, the Crummitts did not grant Hecht blanket authorization to sign their signatures on any future legal document. It is illogical that these text messages would lead an attorney to believe that he had continuing permission to sign clients' signatures on future legal documents. If Hecht believed the September 20, 2013 communication to be unclear, it was incumbent on Hecht to ask the Crummitts' permission to sign future documents. As such, clear and convincing evidence establishes that Hecht's conduct violated MLRPC 8.1(a) when he lied under oath that the Crummitts granted him

19

the ability to sign and submit documents on their behalf in the instances described above, and we overrule Hecht's exception and sustain Bar Counsel's exception.

MLRPC 8.4(a) states that it is professional misconduct for an attorney to "violate . . . the Maryland Lawyers' Rules of Professional Conduct." MLRPC 8.4(b) forbids a lawyer from "commit[ing] a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney." The hearing judge found Hecht violated MLRPC 8.4(b) because "[n]otwithstanding the fact [Hecht] was suspended from the practice of law, [Hecht] continued to practice law and represent the Crummitts as their attorney for a period of more than ten (10) months." As discussed in detail *supra*, Hecht practiced "law in the State of Maryland without an active law license," committing a criminal offense. Md. Code., Bus. Occ. & Prof. § 10-606(c). Hecht's unauthorized practice of law reflected adversely on his honesty and trustworthiness as an attorney. Accordingly, Hecht's conduct violated both MLRPC 8.4(a) and (b), and we overrule Hecht's exception.

A lawyer violates MLRPC 8.4(c) if the lawyer "engage[s] in conduct involving dishonesty, fraud, deceit or misrepresentation." The hearing judge further found Hecht "misrepresented and mischaracterized to the Crummitts the nature of his suspension" and that Hecht "misled the Crummitts and signed, or directed his wife to sign, the Crummitts' discovery responses without their knowledge or consent." The hearing judge concluded that Hecht's conduct was "clearly dishonest and deceitful" because by "submitting the discovery materials to opposing counsel and filing the pleadings with the Court, [Hecht] knowingly gave them the false impression that the Crummitts were representing themselves." As found in our discussion regarding MLRPC 8.1, Hecht engaged in conduct

20

that involved dishonesty, fraud, deceit, or misrepresentation. Therefore, his conduct violated MLRPC 8.4(c), and we overrule Hecht's exception.

Under MLRPC 8.4(d), it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Bar Counsel excepts to the hearing judge not making a finding that Hecht's conduct violated MLRPC 8.4(d). Bar Counsel argues that since Hecht violated both MLRPC 8.4(b) and 8.4(c), Hecht also violated MLRPC 8.4(d). In support, Bar Counsel cites to *Attorney Grievance Commission v. Shryock*, in which we stated that, "[o]rdinarily [violations of MLRPC 8.4(b) and (c)] would constitute a violation of MRPC 8.4(d), in that the conduct which supports a violation of MRPC 8.4(b) and (c) amounts to conduct prejudicial to the administration of justice." 408 Md. 105, 125 (2009). Since we have concluded that Hecht committed a criminal act when he engaged in the unauthorized practice of law and that Hecht made multiple misrepresentations both to his client and to Bar Counsel, we also determine that Hecht has engaged in conduct that is prejudicial to the administration of justice, and, as such, his conduct violated MLRPC 8.4(d). We overrule Hecht's exception and sustain Bar Counsel's exception.

## SANCTION

As we have often stated, the purpose of attorney disciplinary proceedings is to protect the public and deter other lawyers from engaging in misconduct rather than simply punishing the lawyer. *Attorney Grievance Comm'n v. Mollock*, 450 Md. 133, 158 (2016). The public is protected when sanctions are "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance*

21

*Comm'n v. Pennington*, 387 Md. 565, 596 (2005) (citing *Attorney Grievance Comm'n v.*

*Ellison*, 384 Md. 688, 714 (2005)).  This Court has established standards to weigh the

severity of an attorney's misconduct.[3]

---

[3] In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline  proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 277–78 (2016) (cleaned up).

Bar Counsel recommends that we disbar Hecht. In support of this argument, Bar Counsel argues that "[c]onduct involving fraud, dishonesty, or deceit will ordinarily result in disbarment absent compelling extenuating circumstances." *Attorney Grievance Comm'n v. Gerace*, 433 Md. 632, 650 (2012) (citing *Attorney Grievance Comm'n v. Ross*, 428 Md. 50, 86 (2012)).

Bar Counsel argues that the present matter is similar to *Attorney Grievance Commission v. Maignan* because in *Maignan*, we "disbarred an attorney for knowingly engaging in the practice of law at a time when his license to practice law was suspended." 423 Md. 191 (2011). The suspended lawyer in *Maignan* began legal representation of a client for a matter before the United States District Court for the District of Columbia even though the lawyer was not licensed in the United States District Court for the District of Columbia. *Id.* at 197–98. The lawyer did not alert his client about his suspension until late into the representation. *Id.* at 199. While representing the client, the lawyer advised and counseled the client, drafted various pleadings, signed the pleadings on behalf of the client, and filed them with the court. *Id.* at 198. While considering the appropriate sanction, we discussed that the lawyer had been disciplined three times in seven years, with the prior two cases both resulting in indefinite suspensions for the attorney. *Id.* at 206. We concluded by stating that "[w]hen a member of the legal profession consistently violates the Rules of Professional Conduct and continues to disregard repeated admonishments in derogation of the trust and confidence of the public, disbarment is the only remedy." *Id.*

Hecht asks that we continue his indefinite suspension. Hecht again admits his mistakes and states that he was only "motivated by a desire to protect the Crummitts' legal

23

interests" rather than "greed or ill-will." He also points to his "reputation as a competent and truthful practitioner" and that he "made restitution to the Crummitts in the amount of $30,000 from his own funds."

Our holding in *Maignan* has only marginal value here. In both *Maignan* and the present case, suspended attorneys engaged in the unauthorized practice of law and did not immediately alert clients to their suspensions. Unlike the attorney in *Maignan* though, once suspended, Hecht shut down his law practice and did not begin representation of any new clients. Additionally, Hecht's improper conduct was not motivated by financial gain but by, as the hearing judge found, "[a]ttempting to help his wife's friends." Hecht made multiple attempts to obtain new counsel for his clients whereas the lawyer in *Maignan* made no such efforts. Rather than receive a fee for his unauthorized practice of law like the lawyer in *Maignan* did, Hecht reimbursed his clients as restitution for their lawsuit ultimately being dismissed. Importantly, Hecht has been suspended once while the lawyer in *Maignan* had been suspended twice before he was ultimately disbarred.

The hearing judge concluded that four aggravating factors apply to Hecht. Hecht received prior attorney discipline when he was indefinitely suspended by this Court on May 16, 2013. Additionally, as noted by the hearing judge, Hecht's conduct involved "a pattern of dishonest or deceitful conduct in an effort to delay the resolution of the Crummitts' case" and he "committed multiple offenses when he, for a period of almost ten months, practiced law and represented the Crummitts as their attorney without an active law license." Finally, we note that Hecht had practiced law for a significant period of time since he had been a member of the Maryland Bar for over twenty years.

24

The hearing court also recognized several mitigating factors. Hecht has repeatedly admitted that he made mistakes in the way he handled the Crummitts' case. As the hearing judge noted, Hecht has "expressed remorse for the mistakes he made in this matter and did not profit from the Crummitts case," instead paying the Crummitts $30,000 of his own money as restitution. Finally, the hearing judge found that Hecht "made numerous unsuccessful efforts to get new counsel to represent the Crummitts and had a reputation as a competent and truthful practitioner."

Although we agree with Bar Counsel that Hecht's conduct did involve "fraud, dishonesty, or deceit" and that conduct involving "fraud, dishonesty, or deceit" usually results in disbarment, we conclude there is sufficient mitigation to warrant deviating from disbarment in this case. Hecht, upon being suspended, turned away prospective clients and attempted to inform all of his current clients that he was suspended and could no longer represent them. When he discovered that his attempted suspension communication to the Crummitts had failed, he made the wrong decision, predicated on worry and a sense of loyalty for his wife's friends, in continuing to act as their attorney while attempting to find alternative counsel for them. When the Crummitts' lawsuit was dismissed, Hecht financially reimbursed them. Upon our independent review, we conclude that indefinite suspension is the proper sanction. For the reasons found above, we indefinitely suspend Hecht with the right to petition for reinstatement after twelve months from the date of this opinion.

25

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d). JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ROSS D. HECHT IN THE SUM OF THESE COSTS.**

Circuit Court for Prince George's County
Case No. CAE17-06394

Argued: February 5, 2018

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 97

September Term, 2016

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

ROSS D. HECHT

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Dissenting Opinion by Watts, J., which Greene,
J., joins.

_____

Filed: May 10, 2018

Respectfully, I dissent.  I agree with the Majority that Ross D. Hecht, Respondent, violated multiple Maryland Lawyers' Rules of Professional Conduct ("MLRPC").  I disagree, however, that imposition of an indefinite suspension with the right to apply for reinstatement after twelve months is the appropriate sanction, see Maj. Slip Op. at 3, given the numerous instances and serious nature of the misconduct in which Hecht engaged, as well as the aggravating factors present, including, most importantly, Hecht's history of prior attorney discipline.  Under the circumstances of this case, absent any facts that could possibly constitute compelling extenuating circumstances, disbarment is the appropriate sanction "to protect the public and the public's confidence in the legal profession." Attorney Grievance Comm'n v. Allenbaugh, 450 Md. 250, 277, 148 A.3d 300, 316 (2016) (citation omitted).

It is undisputed that Hecht has a significant history of prior attorney discipline.  See id. at 277, 148 A.3d at 316.  At the time that Hecht engaged in the misconduct at issue, he was already indefinitely suspended by consent from the practice of law in Maryland with the right to apply for reinstatement after six months.  See Attorney Grievance Comm'n v. Hecht, 431 Md. 443, 66 A.3d 46 (2013).  Indeed, to this day, Hecht remains indefinitely suspended from the practice of law in Maryland.  Moreover, according to the Commission, in September 2008, the Commission reprimanded Hecht for violating MLRPC 1.16(d) and 8.1(b).  Thus, Hecht has two instances of prior attorney discipline, including the serious sanction of indefinite suspension, to which he consented, for prior violations of the MLRPC.

In this case, Hecht violated a multitude of MLRPC, namely, 1.1 (Competence), 1.3

(Diligence), 1.4(a), 1.4(b) (Communication), 1.16(a), 1.16(d) (Declining or Terminating Representation), 3.2 (Expediting Litigation), 3.3 (Candor Toward the Tribunal), 3.4(d) (Fairness to Opposing Party and Counsel), 4.1 (Truthfulness in Statements to Others), 5.5(a), 5.5(b) (Unauthorized Practice of Law), 8.1(a) (Disciplinary Matters), 8.(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC). See Maj. Slip Op. at 14, 16, 17, 19, 20, 21. Significantly, Hecht's violations include MLRPC 8.4(b), involving Hecht's unauthorized practice of law, and MLRPC 8.1(a) and 8.4(c), involving Hecht's intentionally dishonest conduct. Hecht violated MLRPC 8.4(b) by practicing law and representing the Crummitts while indefinitely suspended from the practice of law in Maryland, thereby committing a criminal offense.[1] Indeed, the Majority concludes that "Hecht's unauthorized practice of law reflected adversely on his honesty and trustworthiness as an attorney." Maj. Slip Op. at 20.

Importantly, though, Hecht's dishonest behavior extended beyond engaging in the unauthorized practice of law. As the Majority concludes, Hecht engaged in intentionally

---

[1]Md. Code Ann., Bus. Occ. & Prof. (1989, 2010 Repl. Vol.) ("BOP") § 10-601(b)(3) ("While an . . . individual's right to practice law is suspended . . . , the individual may[] perform any other act that is necessary to conclude the affairs of a law practice but that does not constitute practicing law." (Paragraph break omitted)); BOP § 10-602 ("Unless authorized by law to practice law in the State, a person may not represent to the public, by use of a title, including 'lawyer', 'attorney at law', or 'counselor at law', by description of services, methods, or procedures, or otherwise, that the person is authorized to practice law in the State."); BOP § 10-606(c) ("Except as provided in subsections (a) and (b) of this section, a person who violates any provision of this title is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000 or imprisonment not exceeding 1 year or both.").

dishonest conduct in several instances. According to the Majority, Hecht violated MLRPC 8.1(a) in three respects—(1) by "'knowingly and intentionally' attempt[ing] to deceive Bar Counsel in his submission of an affidavit to Bar Counsel"; (2) by "'knowingly and intentionally' testifying falsely that he only 'assisted' Lynn Crummitt in drafting discovery materials and pleadings"; and (3) by "l[ying] under oath that the Crummitts [had] granted [him] the ability to sign and submit documents on their behalf[.]" Maj. Slip Op. at 19-20. The Majority also concludes that, based on his violations of MLRPC 8.1(a), "Hecht engaged in conduct that involved dishonesty, fraud, deceit, or misrepresentation" in violation of MLRPC 8.4(c). Maj. Slip Op. at 20-21. Among other things, Hecht falsely testified that he only assisted Lynn Crummitt in drafting discovery materials and pleadings when, in actuality, the Crummitts did not draft discovery materials and pleadings, but instead simply reviewed items that Hecht had drafted or allowed Hecht to submit items that he had drafted. See Maj. Slip Op. at 19. Hecht also "lied under oath" that the Crummitts had granted him authority to sign and submit documents on their behalf when, in actuality, the September 20, 2013 text message communication between Heidi Hecht and Lynn Crummitt simply authorized Hecht to sign specific interrogatories on the Crummitts' behalf, and did not provide Hecht with a blanket authorization or continuing permission to sign for the Crummitts on future legal documents. See Maj. Slip Op. at 19. These instances clearly demonstrate that Hecht's testimony during the attorney discipline proceeding involved knowingly false statements of material fact in violation on MLRPC 8.1(a), and, correspondingly, conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of MLRPC 8.4(c). In other words, Hecht engaged in intentionally dishonest

- 3 -

conduct.

And, as noted by the Majority, among four aggravating factors, the hearing judge specifically concluded that

> Hecht's conduct involved "a pattern of dishonest or deceitful conduct in an effort to delay the resolution of the Crummitts' case" and he "committed multiple offenses when he, for a period of almost ten months, practiced law and represented the Crummitts as their attorney without an active law license."

Maj. Slip Op. at 24.

Recently, in Attorney Grievance Comm'n v. Smith, 457 Md. 159, 222-23, 177 A.3d 640, 678 (2018), this Court explained the significance and effect of intentional dishonest conduct by a lawyer:

> In *Attorney Grievance Comm'n v. Vanderlinde*, we articulated our admonishment of attorneys who engaged in deceitful behavior to the detriment of the public:
>
>> Upon reflection as a Court, in disciplinary matters, we will not in the future attempt to distinguish between degrees of intentional dishonesty based upon convictions, testimonials or other factors. Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.
>>
>> Disbarment ordinarily should be the sanction for intentional dishonest conduct.
>
> 364 Md. 376, 418, 773 A.2d 463, 488 (2001).
>
> Dishonest conduct reflects a range of acts, from misappropriation of funds to misrepresentations to a client, Bar Counsel, or the court.

Indeed, this Court has said time and time again that, "[g]enerally, the sanction of

disbarment is appropriate when an attorney has acted with intentional dishonesty in violation of [MLRPC] 8.4(c), absent [compelling] extenuating circumstances." Smith, 457 Md. at 223, 177 A.3d at 678 (citations omitted); see also Attorney Grievance Comm'n v. Guida, 391 Md. 33, 63, 891 A.2d 1085, 1102-03 (2006) (The lawyer "engaged in intentional dishonesty and deceit that undermines the trust that must be at the center of the lawyer-client relationship. This Court has stated that intentional dishonest conduct by an attorney is almost beyond excuse and that disbarment should ordinarily be the sanction for such conduct." (Cleaned up)). In short, intentional dishonest conduct by a lawyer is among the most serious misconduct that a lawyer can commit, and where a lawyer engages in such intentionally dishonest conduct in violation of MLRPC 8.4(c), and where there are no compelling extenuating circumstances justifying a sanction less than disbarment, ordinarily, disbarment is warranted.

In my view, given Hecht's intentionally dishonest conduct and other numerous instances of misconduct, and that there are no compelling extenuating circumstances, the sanction of disbarment is warranted. I would conclude that the mitigating factors found by the hearing judge, which the majority opinion accepts—remorse, restitution, and reputation, see Maj. Slip Op. at 25—do not constitute compelling extenuating circumstances and are insufficient to mitigate Hecht's misconduct such that a second indefinite suspension is appropriate. Obviously, the previous indefinite suspension imposed by consent against Hecht was insufficient to protect the public, and it is unclear why a second indefinite suspension would somehow now be sufficient given the multitude of MLRPC that Hecht violated while indefinitely suspended from the practice of law the

first time. By imposing an indefinite suspension with the right to apply for reinstatement after twelve months, the Majority has given Hecht yet another bite at the apple with respect to harming the public and further eroding the public's confidence in the legal profession. With this sanction, despite his intentional dishonest conduct, the Majority has guaranteed Hecht yet another date by which he has the right to apply for reinstatement to the practice of law in Maryland. In my view, the indefinite suspension imposed by the Majority is inadequate to protect the public under the circumstances of the case.

In sum, given the lack of compelling extenuating circumstances, Hecht's intentionally dishonest conduct, his numerous other violations of the MLRPC, the aggravating factors present, most importantly his history of prior attorney discipline, and recognizing that the misconduct in this case occurred while Hecht was already indefinitely suspended from the practice of law in Maryland, I would conclude that disbarment is warranted. For the above reasons, respectfully, I dissent.

Judge Greene has authorized me to state that he joins in this opinion.