Attorney Grievance Comm'n v. Andrew Ndubisi Ucheomumu, Misc. Docket AG No. 58, September Term, 2016

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred lawyer who failed to order transcripts that were necessary for appeal to proceed, failed to advise client to do so, and failed to file timely motion for extension of time to file transcripts, resulting in appeal's dismissal; completely failed to accomplish objectives of his representation of client in appeal; did not advise client of deadline for ordering transcripts, his failure to meet it, his failure's possible consequences, and show cause order that Court of Special Appeals issued; failed to comply with client's requests for copies of certain documents; failed to communicate, before or during his representation, that he would charge hourly rate; collected, and failed to earn or refund, $6,200 that client paid him; withdrew unearned funds from, and failed to deposit unearned funds into, his attorney trust account; falsely represented to Court of Special Appeals that there had been delay in ordering transcripts because he had not received client's case file from her previous counsel; falsely represented to Bar Counsel that he had advised client to order transcripts, that she had never paid him so that he could order transcripts, and that Court of Special Appeals had dismissed appeal because client had failed to order transcripts; and falsely represented to client that she was responsible for appeal's dismissal. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.2(a) (Allocation of Authority Between Client and Lawyer), 1.3 (Diligence), 1.4(a)(2), 1.4(a)(3), 1.4(b) (Communication), 1.5(a) (Unreasonable Fees), 1.5(b) (Communication of Fees), 1.15(a), 1.15(c) (Safekeeping Property), 1.16(d) (Terminating Representation), 3.3(a)(1) (Candor Toward Tribunal), 8.1(a) (Disciplinary Matters), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to Administration of Justice), and 8.4(a) (Violating MLRPC).

Circuit Court for Prince George's County
Case No. CAE17-07944

Argued: October 4, 2018

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 58

September Term, 2016

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

ANDREW NDUBISI UCHEOMUMU

_____

Barbera, C.J.
Greene
*Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.

_____

Filed: November 16, 2018

*Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Md. Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

This attorney discipline proceeding involves a lawyer who, among other misconduct, caused an appeal in his client's case to be dismissed and lied to his client, Bar Counsel, and the Court of Special Appeals in an attempt to deflect the blame for the appeal's dismissal.

Shannan Martin retained Andrew Ndubisi Ucheomumu, Respondent, a member of the Bar of Maryland, to represent her in an appeal. For an appeal to proceed, transcripts of relevant proceedings in the trial court need to be ordered by a certain deadline. In this case, after the deadline passed, Ucheomumu requested from Martin money to cover the cost of obtaining transcripts, and she paid him $3,000. Ucheomumu, however, never ordered the transcripts or advised Martin to do so. The Court of Special Appeals issued an order directing Martin to show cause why the appeal should not be dismissed for failure to file the transcripts. Ucheomumu filed a motion for extension of time to file the transcripts in which he falsely stated that one of the reasons why there had been a delay in filing the transcripts was that Martin's previous counsel had not provided him with them.

Martin terminated Ucheomumu's representation. Although Ucheomumu had not earned the total of $6,200 that Martin had paid him, he did not refund the $6,200. Additionally, after the Court of Special Appeals denied the motion for extension of time and dismissed the appeal, Ucheomumu falsely advised Martin that she was responsible for the appeal's dismissal. Martin filed a complaint against Ucheomumu with Bar Counsel. In his response to Martin's complaint, Ucheomumu falsely stated that he had advised Martin to order the transcripts, that she had never paid him so that he could order the transcripts, and that the Court of Special Appeals had dismissed the appeal because Martin

had failed to order the transcripts.

On November 18, 2016, on behalf of the Attorney Grievance Commission, Petitioner, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Ucheomumu, charging him with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC")[1] 1.1 (Competence), 1.2(a) (Allocation of Authority Between Client and Lawyer), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Reasonable Fees), 1.5(b) (Communication of Fees), 1.8(a), 1.8(h) (Conflict of Interest; Current Clients; Specific Rules), 1.15(a), 1.15(b), 1.15(c) (Safekeeping Property), 1.16(d) (Terminating Representation), 3.3(a)(1) (Candor Toward the Tribunal), 8.1(a) (Disciplinary Matters), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating or Attempting to Violate the MLRPC), and current Maryland Rule 19-408 (Commingling of Funds).[2]

On November 22, 2016, this Court designated the Honorable David A. Boynton of the Circuit Court for Montgomery County to hear this attorney discipline proceeding. On March 29, 2017, Ucheomumu filed in this Court a "Motion for Change of Venue and to Amend Order Designating Judg[e.]" On March 31, 2017, this Court issued an Order

---

[1]Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct, or MARPC, and renumbered. We will refer to the MLRPC because the misconduct at issue occurred before this change.

[2]On June 12, 2017, Bar Counsel filed in this Court an "Amended Petition for Disciplinary or Remedial Action," charging Ucheomumu with violating former Maryland Rule 16-607 (Commingling of Funds), as opposed to current Maryland Rule 19-408. The charges in the two Petitions for Disciplinary or Remedial Action were otherwise identical. Before a hearing judge, Bar Counsel withdrew the charges that Ucheomumu had violated former Maryland Rule 16-607 and MLRPC 1.15(b).

granting the Motion for Change of Venue.  On April 12, 2017, this Court designated the Honorable Tiffany H. Anderson ("the hearing judge") of the Circuit Court for Prince George's County to hear this attorney discipline proceeding.

On December 22, 2017, Ucheomumu filed in this Court a "Motion to Dismiss Improperly-Filed and Unauthorized Charges[] and Request for Oral Argument[,]" a brief in support thereof, and a Motion to Seal as to one of the exhibits that he attached to the brief.  On December 28, 2017, Ucheomumu filed in this Court an "Emergency Motion to Stay Trial Court Proceedings[,]" a "Motion for Issuance of Additional Briefing Schedule as to Questions of Law Capable of Repetition, but Consistently Evading Review, or in the Alternative, Motion for Appropriate Reli[e]f[,]" and a brief in support of the motions.  On January 2, 2018, this Court issued an Order granting the Motion to Seal and denying the Motion to Dismiss and the Motion for Issuance.

On January 10, 16, and 17, 2018, the hearing judge conducted a hearing.[3]  On April 25, 2018, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, concluding that Ucheomumu had violated MLRPC 1.1, 1.2(a), 1.3, 1.4, 1.5, 1.15(a), 1.15(c), 1.16, 3.3, 8.1, 8.4(c), 8.4(d), and 8.4(a), and had attempted to violate MLRPC 1.8(h)(1) and 1.8(h)(2) in violation of MLRPC 8.4(a).[4]

On July 16, 2018, Ucheomumu filed in this Court a "Motion to Compel Production

---

[3]The Petitions for Disciplinary or Remedial Action also charged Ucheomumu with violating various MLRPC involving another client in a separate matter.  After the hearing, however, Bar Counsel withdrew the charges with respect to the allegations concerning Ucheomumu's representation of the second client.

[4]The hearing judge did not address whether Ucheomumu violated, or attempted to violate, MLRPC 1.8(a).  Accordingly, neither do we.

of Documents [Bar Counsel] Improperly[ ]Withheld During the Trial Court Proceedings; and Exceptions to Trial Court Rulings Regarding Such Documents" and a "Motion to Unseal Records and Deposition and Vacate Non-Dissemination Order[.]" On August 23, 2018, this Court issued an Order denying the Motion to Compel and the Motion to Unseal. On September 7, 2018, Ucheomumu filed in this Court motions for reconsideration of this Court's denial of the Motion to Compel and the Motion to Unseal. On the same date, this Court issued an Order denying the motions for reconsideration.

On October 4, 2018, we heard oral argument. For the below reasons, we disbar Ucheomumu.

## BACKGROUND

The hearing judge found the following facts, which we summarize.

On June 16, 2009, this Court admitted Ucheomumu to the Bar of Maryland. At all relevant times, Ucheomumu was a solo practitioner with a virtual office in Montgomery County.

On July 31, 2014, in a child custody case, the Circuit Court for Prince George's County issued an order that was unfavorable to Martin. On November 3, 2014, Ucheomumu and Martin signed an "Attorney Engagement Agreement," which stated as follows. Martin had "filed a pro se appeal and need[ed] the legal services of [Ucheomumu's firm] to handle the Appeal Brief and oral argument[.]" Martin would pay Ucheomumu a flat fee of $10,500, and would also pay the filing fees and the cost of obtaining transcripts. Ucheomumu's firm would "deposit any and all" payments "in [its] general operating account, and not in a trust account." If, "[a]fter starting the work,"

Ucheomumu's firm withdrew from the representation "due to any conflict," Martin would receive a refund on a "pro[ ]rata basis[,] or" her payments would be applied to "outstanding legal bills." The Attorney Engagement Agreement did not specify an hourly rate, or explain how the amount of any "outstanding legal bills[,]" or the amount of any refund on "a pro[ ]rata basis[,]" would be calculated. Ucheomumu did not advise Martin to seek independent counsel to review the Attorney Engagement Agreement's statement that he would not deposit unearned funds into an attorney trust account.

After Martin retained Ucheomumu to represent her in the appeal, she requested from him legal advice that pertained to the child custody case, but that was outside the scope of his representation of her in the appeal. Specifically, Martin requested from Ucheomumu legal advice regarding visitation with her children. Ucheomumu reviewed e-mails and other documents that pertained to the child custody case, and, on Martin's behalf, made phone calls and engaged in negotiation with opposing counsel regarding visitation with her children. The Attorney Engagement Agreement did not mention the costs of these legal services. There was no evidence that Ucheomumu and Martin entered into a separate or amended retainer agreement that addressed the costs of these legal services. Ucheomumu did not advise Martin that he applied at least some of her payments for the appeal toward the costs of these legal services.

On November 3, 2014, Martin paid Ucheomumu $3,000, which he deposited into his attorney trust account; he drafted a Notice of Appeal and advised Martin to file it in the circuit court; and she did so. On November 4, 2014, Ucheomumu e-mailed Martin's previous counsel in an attempt to obtain her case file. Martin's previous counsel never

provided any documents to Ucheomumu. On November 7, 2014, Ucheomumu filed a Civil Appeal Information Report on Martin's behalf, and withdrew $1,000 from his attorney trust account. On November 19, 2014, Martin paid Ucheomumu $200, which he did not deposit into his attorney trust account.

On November 20, 2014, the Court of Special Appeals issued an order to proceed, stating that there would be no prehearing conference, and that the appeal would be governed by Maryland Rule 8-207(a), which provides for expedited appeals in child custody and visitation cases. See Md. R. 8-207(a)(1)(B). In November 2014, Maryland Rule 8-411(b)(1) stated that, generally, "[t]he appellant shall order the transcript within ten days . . . after [] the date of an order . . . that the appeal proceed without a prehearing conference, . . . unless a different time is fixed by that order[.]" (Paragraph break omitted). Here, ten days after the date of the order to proceed was November 30, 2014, which was a Sunday; thus, the transcripts of the relevant proceedings in the circuit court needed to be ordered by December 1, 2014, the next business day.[5] See Md. R. 1-203(a)(1). Ucheomumu never ordered the transcripts, never advised Martin to do so, and never filed a timely motion for extension of time to file the transcripts.

On December 2, 2014, Ucheomumu withdrew $2,000 from his attorney trust account. On December 8, 2014, a week after the date on which the transcripts were to be ordered, Ucheomumu sent a text message to Martin, requesting a payment for the purpose of "order[ing] the transcript[s] ASAP without any further delay." This was the only

---

[5]The hearing judge inadvertently stated that the deadline was November 30, 2014.

occasion on which Ucheomumu requested a payment to cover the cost of obtaining transcripts. Ucheomumu did not inform Martin that he had missed the December 1, 2014 deadline for ordering the transcripts. On December 10, 2014, for the purpose of covering the cost of obtaining the transcripts, Martin paid Ucheomumu $3,000, which he did not deposit into his attorney trust account. Ucheomumu never earned $6,200 in attorney's fees that Martin had paid him, as he failed to take any action to advance the appeal, he never ordered the transcripts that were necessary to the appeal, and his legal services pertaining to visitation with Martin's children were not a significant undertaking. Additionally, Ucheomumu never drafted a brief on Martin's behalf.

At some point, Ucheomumu contacted a transcription company. On January 15, 2015, the transcription company responded to Ucheomumu, confirming the existence of transcripts of two days of a trial. The hearing judge did not find that Ucheomumu took any action in response.

On February 2, 2015, the Court of Special Appeals issued an order directing Martin to show cause why the appeal should not be dismissed for failure to file the transcripts. On February 24, 2015, Ucheomumu e-mailed Martin, stating that he lacked the transcripts. Ucheomumu did not inform Martin of the show cause order, or advise her that the Court of Special Appeals would dismiss the appeal for failure to file the transcripts.

On February 27, 2015, in the Court of Special Appeals, Ucheomumu filed an "Appellant[']s Motion for Extension of Time to Order Transcript[s] and File Appellant's Brief." In the Motion for Extension, Ucheomumu requested a two-month extension of the deadline for filing Martin's brief, and represented that there had been a delay in ordering

the transcripts because: (1) the circuit court had been closed for multiple days; (2) he was uncertain of how long the trial had been due to confusing information on the docket; and (3) he had not received Martin's case file from her previous counsel, who, he believed, had copies of the transcripts. Ucheomumu knowingly made a false statement by stating that there had been a delay in ordering the transcripts because he had not received Martin's case file from her previous counsel. By requesting from Martin on December 8, 2014 a payment for the cost of obtaining transcripts, Ucheomumu indicated that, as of that date, he was no longer waiting for Martin's previous counsel to provide the transcripts, and instead planned to use a payment from Martin to order the transcripts himself. Ucheomumu "misled [] the Court of Special Appeals . . . in an attempt to explain his failure to order the transcripts."

On March 10, 2015, Martin requested a copy of the Motion for Extension, but she did not hear back from Ucheomumu. On March 11, 2015, Martin again requested a copy of the Motion for Extension, and again did not hear back from Ucheomumu. Subsequently, Martin requested that Ucheomumu provide copies of all of the documents that he had drafted on her behalf. Ucheomumu never did so.

On March 18, 2015, Martin terminated Ucheomumu's representation, sought a refund, and requested an accounting of all of the legal services that he had performed for her. At some point, Martin hired new counsel to represent her in the appeal. On March 20, 2015, Ucheomumu provided Martin with an invoice that indicated that she owed him $10,944.50 based on an hourly rate of $295. This was the first occasion on which Ucheomumu indicated that he would charge Martin an hourly rate. On the same date, Ucheomumu offered to refund Martin $1,200, but did not explain how he calculated that

amount. Martin declined Ucheomumu's offer and requested that the two of them discuss the payments. Ucheomumu e-mailed Martin and her new counsel, again offering to refund Martin $1,200—on the condition that she would sign a release that was attached to the e-mail, and that would preclude her from suing him. Ucheomumu did not advise Martin to seek independent counsel to review the release. Martin declined Ucheomumu's second offer.

On March 25, 2015, the Court of Special Appeals issued an order denying the Motion for Extension and dismissing the appeal. Ucheomumu's inaction caused the appeal's dismissal. On March 30, 2015, Ucheomumu e-mailed the order and the Attorney Engagement Agreement to Martin and stated:

> Our agreement specifically specified that you are responsible for paying the transcripts; see attached. I told you many times to deposit the money for the transcript[s] and you told me that your grand[]father was going to loan you money, but that did not materialize. I specifically did not want to let the Court of Special Appeals know that you have not paid for the transcripts because it is my duty to protect you.

(Cleaned up).

On April 1, 2015, in the Court of Special Appeals, Martin's new counsel filed a Motion to Reinstate. On April 6, 2015, in the Court of Special Appeals, Martin's new counsel filed transcripts of certain circuit court proceedings. On April 14, 2015, the Court of Special Appeals denied the Motion to Reinstate. Martin's new counsel then filed in this Court a petition for a writ of *certiorari*, which this Court denied.

On April 13, 2015, Martin filed a complaint against Ucheomumu with Bar Counsel. On June 10, 2015, Ucheomumu provided to Bar Counsel a response to Martin's complaint

in which he falsely stated that he had advised Martin to order the transcripts, that she had never paid him so that he could order the transcripts, and that the Court of Special Appeals had dismissed the appeal because Martin had failed to order the transcripts.

According to the hearing judge, Ucheomumu's misconduct was aggravated by prior attorney discipline, a dishonest or selfish motive, a pattern of misconduct, multiple violations of the MLRPC, and false statements during this attorney discipline proceeding. Ucheomumu's misconduct was mitigated by his "provision of some legal services [that were] related to" visitation with Martin's children.

## STANDARD OF REVIEW

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. See Md. R. 19-741(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); Attorney Grievance Comm'n v. Slate, 457 Md. 610, 626, 180 A.3d 134, 144 (2018) ("This Court reviews for clear error a hearing judge's findings of fact." (Cleaned up)); Md. R. 19-741(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. See Md. R. 19-727(c) ("Bar Counsel has the burden of proving the averments of the [P]etition [for Disciplinary or Remedial Action] by clear and convincing evidence.").

## DISCUSSION

### (A) Ucheomumu's Requests for Dismissal or Remand

In his "Exceptions to the Hearing Judge's Findings of Fact and Conclusions of Law and Recommendation for Disposition[,]" Ucheomumu requests that we dismiss this attorney discipline proceeding "due to [Bar Counsel]'s discovery misconduct as set forth in the Motion to Compel[.]" In his Exceptions, Ucheomumu repeats multiple contentions that he made in the Motion to Compel, as well as the Motion to Unseal and the Motion to Dismiss. Specifically, in both his Exceptions and the Motion to Compel, Ucheomumu argued that Bar Counsel improperly failed to answer interrogatories under oath, Bar Counsel improperly withheld certain documents, and those documents were similar to a memorandum that this Court stated was not attorney work product in Matter of White, 458 Md. 60, 92, 181 A.3d 750, 768 (2018). In both his Exceptions and the Motion to Unseal, Ucheomumu argued that the hearing judge improperly sealed the transcript of his deposition of the Attorney Grievance Commission's Executive Secretary. And, in both his Exceptions and the Motion to Dismiss, Ucheomumu argued that the Peer Review Panel was improperly comprised of individuals from Montgomery County rather than individuals from Prince George's County.

This Court denied the Motion to Compel, the Motion to Unseal, the Motion to Dismiss, and the motions for reconsideration of this Court's denials of the Motion to Compel and the Motion to Unseal. Ucheomumu's exceptions, which raise the same arguments that were made in the Motions to Compel, Unseal, and Dismiss, are overruled. We decline to yet again consider arguments of which we have already disposed.

In his Exceptions, Ucheomumu contends that the hearing judge erred in limiting his deposition of the Attorney Grievance Commission's Executive Secretary by denying him the opportunity to ask about "fundamental topics[,] such as the factual basis for its contentions in the Petition for Disciplinary or Remedial Action, . . . or [Bar Counsel's] compliance with its discovery obligations." Ucheomumu also argues that the hearing judge made several errors at the hearing, such as "[i]mproperly [h]urr[ying him] along[,]" not taking judicial notice of certain documents, and denying him the "opportunity to introduce evidence inuring to unauthorized charges[.]" Ucheomumu seeks dismissal of this attorney discipline proceeding on these grounds. Upon a careful review of the record, we discern no procedural error or abuse of discretion on the hearing judge's part, and we decline to dismiss this attorney discipline proceeding.

In his Exceptions, Ucheomumu also requests that we remand this attorney discipline proceeding so that the hearing judge "can consider [] newly-discovered evidence"— namely, a purported November 3, 2014 e-mail in which Ucheomumu stated to Martin: "We need to . . . order the transcript[s] . . . as quickly as possible"; purported records of telephone calls and text messages between Ucheomumu and Martin from October 2014 to March 2015; and the testimony of "a witness who [allegedly] has knowledge of attempted settlement negotiations in the" child custody case. None of this proffered evidence causes us to conclude that the hearing judge's findings of fact are clearly erroneous. In the purported November 3, 2014 e-mail, Ucheomumu did not advise Martin to order the transcripts, nor did Ucheomumu indicate that Martin was responsible for ordering the transcripts; significantly, in a December 8, 2014 text message, he stated to Martin: "I need

to order the transcript[s] ASAP without any further delay."  Ucheomumu does not draw our attention to the content of any of the purported telephonic conversations and text messages, or proffer that any of them contradict the hearing judge's findings that Ucheomumu failed to inform Martin of the December 1, 2014 deadline for ordering the transcripts, and failed to inform Martin that he had missed the deadline.  Testimony regarding settlement negotiations in the child custody case would be of no consequence because Bar Counsel did not charge Ucheomumu with any misconduct that arose out of the alleged settlement negotiations.  We decline Ucheomumu's request to remand the attorney discipline proceeding.

### (B) Findings of Fact

Bar Counsel does not except to any of the hearing judge's findings of fact.  Ucheomumu raises fifteen exceptions to the hearing judge's findings of fact.  We overrule all but one of the exceptions.

First, Ucheomumu excepts to the hearing judge's finding that, on December 8, 2014, he requested from Martin money to cover the cost of obtaining transcripts.  The hearing judge admitted into evidence a series of text messages between Ucheomumu and Martin, including a December 8, 2014 text message in which he stated: "Shannan, how is your funding coming?  I need to order the transcript[s] ASAP without any further delay."  Ucheomumu contends that, in his text message, he did not expressly ask Martin for money.  Ucheomumu's contention is without merit.  Given that Ucheomumu asked Martin how her "funding [was] coming[,]" and, in the next sentence, informed her that he "need[ed] to order the transcript[s,]"  the hearing judge did not clearly err in determining that the text

- 13 -

message was a request for money to cover the cost of obtaining transcripts.

Second, Ucheomumu excepts to the hearing judge's finding that the purpose of Martin's $3,000 payment on December 10, 2014 was to cover the cost of obtaining the transcripts. Contrary to Ucheomumu's position, the evidence supports the hearing judge's finding. As mentioned previously, on December 8, 2014, Ucheomumu sent Martin a text message, requesting money to cover the cost of obtaining transcripts. On the same day, Martin replied, stating: "I was just informed that it should be wired to my account within 72 hours." On December 10, 2014, Martin paid Ucheomumu $3,000. The timing of Martin's payment—just two days after the date on which Ucheomumu requested from her money to cover the cost of obtaining transcripts, and that Martin stated that she would receive money within 72 hours—supports the hearing judge's finding that the purpose of the payment was to cover the cost of obtaining the transcripts.

Third, Ucheomumu excepts to the hearing judge's finding that, after Martin terminated his representation, he billed her for legal services that were outside the scope of his representation of her in the appeal. Ucheomumu argues that the $10,500 flat fee covered all of the legal services that he provided to Martin, including services related to visitation with her children; that he calculated the $10,944.50 balance due in the invoice in response to her request for an accounting; and that he did not attempt to collect the balance due. Ucheomumu's logic is faulty. The Attorney Engagement Agreement stated that Ucheomumu would represent Martin in the appeal for a flat fee of $10,500, and did not contemplate that he would provide any other legal services to her. Yet, after Martin terminated Ucheomumu's representation, he provided her with an invoice with a balance

due of $10,944.50. Given that Ucheomumu could not have provided Martin with more than $10,500's worth of legal services in the appeal, as he never ordered transcripts of the circuit court proceedings, filed briefs, or appeared at any oral argument, he necessarily billed her $10,944.50 for legal services that were not related to his representation of her in the appeal, or services that he did not perform at all.

Fourth and fifth, Ucheomumu excepts to the hearing judge's findings that he never earned the $6,200 that Martin had paid him, that he failed to deposit and maintain the funds in an attorney trust account until earned, and that he failed to take any action to advance the appeal. The evidence provides ample support for the hearing judge's findings. Martin retained Ucheomumu to represent her in the appeal, draft and file a brief on her behalf, and participate in oral argument. Ucheomumu never drafted a brief on Martin's behalf, and there was no oral argument because the Court of Special Appeals dismissed the appeal for failure to file the transcripts of proceedings in the circuit court. The transcripts were never filed because Ucheomumu never ordered them and never advised Martin to do so. Ucheomumu was responsible for the appeal's dismissal, and he did not earn $6,200 for work that he failed to perform. Ucheomumu clearly did not earn the $6,200 by performing such perfunctory tasks as e-mailing Martin's previous counsel, drafting a notice of appeal, filing a Civil Appeal Information Report, and filing an untimely Motion for Extension. Nor did Ucheomumu earn the $6,200 by performing legal services that were related to visitation with Martin's children, as the hearing judge found, and this work was outside the scope of Ucheomumu's representation in the appeal. Specifically, Ucheomumu reviewed e-mails and other documents that pertained to the child custody case, and, on Martin's

- 15 -

behalf, made phone calls and engaged in negotiation regarding visitation with her children. The hearing judge found that Ucheomumu's legal services pertaining to visitation with Martin's children were not a significant undertaking. The hearing judge also found that, although Ucheomumu deposited into an attorney trust account the initial $3,000 that Martin had paid him, he withdrew those funds from the attorney trust account, and he did not deposit into an attorney trust account the additional $3,200 that Martin paid him. The hearing judge did not clearly err in finding that Ucheomumu never earned the $6,200, and that he failed to deposit and maintain the funds in an attorney trust account until earned.

Sixth, Ucheomumu excepts to the hearing judge's finding that he did not advise Martin to seek independent counsel to review the Attorney Engagement Agreement's statement that he would not deposit unearned funds into an attorney trust account. Ucheomumu asserts that there is no evidence that he did not provide such advice. Ucheomumu's assertion is a red herring. MLRPC 1.15(c) required Ucheomumu to obtain Martin's "informed consent, confirmed in writing, to" his practice of not depositing unearned funds into an attorney trust account. Comment 6 to MLRPC 1.0 addresses informed consent, in pertinent part, as follows: "In some circumstances[,] it may be appropriate for a lawyer to advise a client . . . to seek the advice of another lawyer." Ucheomumu failed to put into writing advice of Martin's right to seek independent counsel, or a statement that he had orally provided such advice. And Ucheomumu simply makes a bald allegation that the hearing judge clearly erred with respect to the finding.

Seventh, although Ucheomumu does not challenge the hearing judge's finding that he never ordered the transcripts or advised Martin to do so, he contends that he promptly

attempted to obtain the transcripts from her previous counsel. Ucheomumu's contention does not undermine the hearing judge's finding. On November 4, 2014, in an attempt to obtain Martin's case file, Ucheomumu e-mailed her previous counsel, who, he believed, had copies of the transcripts. Regardless of whether Ucheomumu's belief was accurate, Martin's previous counsel never provided the transcripts. As of November 20, 2014, when the Court of Special Appeals issued an order to proceed—which triggered a ten-day deadline for ordering the transcripts, see Md. R. 8-411(b)(1)—it was incumbent on Ucheomumu to promptly order the transcripts.

Eighth, Ucheomumu excepts to the hearing judge's finding that his inaction caused the appeal's dismissal. Ucheomumu argues that he could not have been responsible for the appeal's dismissal, as the appeal was "a nullity" because Martin prematurely filed a notice of appeal while a motion to alter or amend the judgment was pending. Ucheomumu is wrong. The hearing judge admitted into evidence the child custody case's docket entries. According to a docket entry dated July 24, 2014, at a hearing, the circuit court awarded the opposing party primary physical and sole legal custody of Martin's children. According to a docket entry dated September 22, 2014, Martin filed a motion to alter or amend the judgment. And, according to a docket entry dated October 3, 2014, the circuit court issued an order in which it again awarded the opposing party primary physical and sole legal custody of Martin's children. The order was a final judgment, regardless of whether the circuit court expressly denied the motion to alter or amend. Indeed, another docket entry dated October 3, 2014 stated that the child custody case was closed. Martin needed to file a notice of appeal within thirty days of the ruling disposing of the motion to alter or amend.

See Md. 8-202(c). The date that was thirty days from October 3, 2014—namely, November 2, 2014—was a Sunday, so the deadline for the filing of the appeal was the next day. See Md. R. 1-203(a)(1). On November 3, 2014, Martin filed a timely Notice of Appeal. In short, the appeal was not "a nullity," and its dismissal was Ucheomumu's fault.

Ninth, Ucheomumu excepts to the hearing judge's finding that he did not advise Martin to seek independent counsel to review the release that he had e-mailed to Martin and her new counsel. Ucheomumu also states that Martin testified that he orally advised her to discuss the release with her new counsel. In light of the record confirming Martin's testimony, we sustain Ucheomumu's exception.

Tenth, Ucheomumu excepts to the hearing judge's finding that he never complied with Martin's requests for a copy of the Motion for Extension. Contrary to Ucheomumu's position, the evidence supports the hearing judge's finding. The hearing judge admitted into evidence a series of e-mails between Ucheomumu and Martin with the subject "Date[.]" On March 10, 2015, Martin e-mailed Ucheomumu, stating in pertinent part: "How does the exten[s]ion process work? . . . Please forward me a copy of what you filed." On March 11, 2015, at 7:41 a.m., Martin e-mailed Ucheomumu, stating: "Please respond." At 10:08 p.m., Martin e-mailed Ucheomumu, stating in pertinent part: "I did not receive a copy of the exten[s]ion [that] you filed. If you were not able to figure out how to e[-]mail it, please leave a sealed envelope copy at the concierge desk tomorrow[.]" Martin's 10:08 p.m. e-mail is the last in the series. In other words, the record demonstrates that Ucheomumu never replied to Martin's requests for a copy of the Motion for Extension. Additionally, Martin testified that she did not recall ever receiving a copy of the Motion

for Extension. Martin's testimony, and the e-mails between Martin and Ucheomumu, demonstrate that the hearing judge did not clearly err in finding that he failed to provide her with a copy of the Motion for Extension.

Eleventh, Ucheomumu excepts to the hearing judge's finding that he made a false statement by representing in the Motion for Extension that there had been a delay in ordering the transcripts because he had not received Martin's case file from her previous counsel. The hearing judge found that, in the Motion for Extension, Ucheomumu

> stated that the delay in filing the transcripts . . . was due to: (1) the uncertainty concerning the length of the [] trial[,] and[,] specifically[,] whether the trial spanned two or three days; (2) [Ucheomumu]'s inability to obtain [] Martin's [case] file from her [previous counsel]; and (3) the [circuit court] experiencing several closures. Although[] the reasons for the delay [that were] proffered by [Ucheomumu] are not persuasive[—]and, in fact, did not convince the Court of Special Appeals to grant the [Motion for E]xtension— []there is not clear and convincing evidence that they are knowingly false statements. The evidence presented was not clear and convincing with regard to [Ucheomumu]'s proffer in the [M]otion [for Extension] that his uncertainty of the trial dates caused him to do further research on the issue, and him thereby violating [MLRPC 3.3]. Additionally, no such ruling was made by the Court of Special Appeals [i]n the denial of [the M]otion [for Extension].
>
> [Ucheomumu]'s inability to obtain [] Martin's [case] file from her [previous counsel] may or may not have delayed the filing because[,] as proffered in [the Motion for Extension, Ucheomumu] believed [that] Martin's previous [counsel] already had copies of the transcript[s]. However, this argument falls short because[,] in [Ucheomumu]'s December 08, 2014 [text message to] Martin[,] he specifically ask[ed] her for $3,000.00 for the purpose of ordering the transcripts. Therefore, as of December 8, 2014[, Ucheomumu] was no longer waiting for [] Martin's [previous counsel] to provide the transcripts, as he indicated he would order them with [] Martin's $3,000.00 payment. [] Martin made the payment as requested[] on December 10, 2014, yet the Motion for Extension [] was not filed until February 27, 2015, almost three months later. It is clear from [Ucheomumu]'s [text message] on December 08, 2014 that he was no longer waiting for copies of the transcripts from [] Martin's [previous counsel]. When [Ucheomumu] received the second $3,000.00 payment for the purpose

of ordering the transcripts, there was no evidence of any impediment that would cause a delay in ordering them.

This representation made by [Ucheomumu] within [the M]otion [Extension] is a knowingly false statement of fact[.]

(Cleaned up).

Ucheomumu asserts that the hearing judge contradicted herself by finding both that "there [wa]s not clear and convincing evidence that [Ucheomumu's statements we]re knowingly false[,]" and that Ucheomumu made "a knowingly false statement of fact[.]" In context, it is clear that, when the hearing judge found that "there [wa]s not clear and convincing evidence that [Ucheomumu's statements we]re knowingly false[,]" she was referring to Ucheomumu's statements that he was uncertain of how long the trial had been, and that the circuit court had been closed for multiple days. Indeed, immediately after making this finding, the hearing judge stated that there was not "clear and convincing" evidence that Ucheomumu's statement in the Motion for Extension about "his uncertainty of the trial dates" was a violation of MLRPC 3.3—*i.e.*, a false statement. And, elsewhere in the opinion, the hearing judge observed that the circuit court was closed every day between February 19, 2015 and March 8, 2015. A fair reading of the hearing judge's remarks leads to the conclusion that the hearing judge's finding of dishonesty pertained to Ucheomumu's statement that there had been a delay in ordering the transcripts because he had not received Martin's case file from her previous counsel.

Alternatively, Ucheomumu maintains that the hearing judge's finding that he made a false statement in the Motion for Extension was clearly erroneous because the hearing judge clearly erred in finding that he requested from Martin money to cover the cost of

obtaining transcripts on December 8, 2014, and that the purpose of Martin's $3,000

payment on December 10, 2014 was to cover the cost of obtaining the transcripts. In his

twelfth exception, Ucheomumu makes the same argument in challenging the hearing

judge's finding that he made a false statement to Bar Counsel when he represented that he

had advised Martin to order the transcripts, that she had never paid him so that he could

order the transcripts, and that the Court of Special Appeals dismissed the appeal because

Martin had failed to order the transcripts. As explained above, the hearing judge did not

clearly err in making the findings of fact to which Ucheomumu excepts.

Thirteenth, Ucheomumu excepts to the hearing judge's finding that he made

misrepresentations to Martin. The hearing judge found that Ucheomumu

> misled . . . Martin in an attempt to explain his failure to order the transcripts.
> Ultimately, [the] appeal was dismissed because [Ucheomumu] did not order
> the transcripts. . . . [Ucheomumu] tried to disclaim his responsibility for the
> dismissal of the appeal by placing blame on [] Martin for the delay in the
> order, via an e[-]mail. This Court finds [that Ucheomumu] made several
> knowing and intentional misrepresentations and omissions . . . to [] Martin[.]

Ucheomumu contends that the hearing judge's opinion leaves unclear the

misrepresentations that he made to Martin. We disagree. The hearing judge found that

Ucheomumu "misled . . . Martin in an attempt to explain his failure to order the transcripts."

The hearing judge explained that Ucheomumu was responsible for the appeal's dismissal,

yet he blamed Martin for it in an e-mail. The hearing judge found that, on March 30, 2015,

Ucheomumu e-mailed to Martin the order in which the Court of Special Appeals dismissed

the appeal, and he stated to her: "[Y]ou have not paid for the transcripts[.]" Ucheomumu's

statement was false, as the purpose of Martin's $3,000 payment on December 10, 2014 was

to cover the cost of obtaining the transcripts. By e-mailing the order to Martin and stating that she had not paid for the transcripts, Ucheomumu not only lied about her alleged failure to pay for the transcripts, but also falsely implied that she was responsible for the appeal's dismissal.

Fourteenth, Ucheomumu excepts to the hearing judge's finding that he "did not instruct [] Martin to order the transcripts by the [December 1], 2014 deadline." Ucheomumu argues that, in the Amended Petition for Disciplinary or Remedial Action, Bar Counsel did not allege that he failed to advise Martin to order the transcripts by a certain date, and instead simply alleged that he never advised Martin to order the transcripts. Ucheomumu's claim of lack of notice is without merit. In the Amended Petition for Disciplinary or Remedial Action, Bar Counsel alleged: "On November 20, 2014, the Court of Special Appeals ordered [] Martin's appeal to proceed without a pre-hearing conference. Maryland Rule 8-411(b) requires that an appellant order the transcripts of the underlying proceedings **within ten [] days from the date of that Order.**" (Emphasis added). The Amended Petition for Disciplinary or Remedial Action indicated that Ucheomumu allegedly failed to meet the deadline of December 1, 2014—the day after November 30, 2014, which was a Sunday that was ten days after November 20, 2014, when the Court of Special Appeals issued the order to proceed.

Fifteenth, Ucheomumu excepts to the hearing judge's failure to find that he communicated with Martin on multiple occasions from October 2014 to March 2015. Ucheomumu does not proffer that any of his communications contradict the hearing judge's findings that Ucheomumu failed to inform Martin of the December 1, 2014

deadline for ordering the transcripts, and failed to inform Martin that he had missed the December 1, 2014 deadline. And, at various points within the opinion, the hearing judge discussed communications between Ucheomumu and Martin that occurred between October 2014 and March 2015—namely, Ucheomumu's December 8, 2014 text message to Martin, her November 3, 2014, November 19, 2014, and December 10, 2014 payments to him, and his February 24, 2015 e-mail to her. We decline to find that the hearing judge clearly erred in failing to determine that Ucheomumu communicated with Martin numerous times between October 2014 and March 2015.

### (C) Conclusions of Law

Bar Counsel does not except to any of the hearing judge's conclusions of law. Ucheomumu excepts to all of the hearing judge's conclusions of law. We reverse the hearing judge's conclusions that Ucheomumu attempted to violate MLRPC 1.8(h)(1) and 1.8(h)(2), thereby violating MLRPC 8.4(a), and uphold the rest the hearing judge's conclusions of law.

### MLRPC 1.1 (Competence), 1.2(a) (Allocation of Authority Between Client and Lawyer), and 1.3 (Diligence)

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1. "A lawyer shall act with reasonable diligence and promptness in representing a client." MLRPC 1.3. MLRPC 1.2(a) states in pertinent part:

> [A] lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to

the means by which they are to be pursued.  A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.

Clear and convincing evidence supports the hearing judge's conclusion that Ucheomumu violated MLRPC 1.1, 1.2(a), and 1.3.  The Attorney Engagement Agreement set forth the objectives of Ucheomumu's representation of Martin in the appeal—namely, that he would draft a brief and participate in oral argument on her behalf.  On November 20, 2014, the Court of Special Appeals issued an order to proceed, meaning that the transcripts of the relevant proceedings in the circuit court needed to be ordered by December 1, 2014.  Ucheomumu never ordered the transcripts, never advised Martin to do so, and never filed a timely motion for extension of time to file the transcripts.  As a result, the Court of Special Appeals dismissed the appeal, and there was no oral argument. Ucheomumu never drafted a brief on Martin's behalf.  Ucheomumu's inaction constituted a failure of competence and diligence, as well as a failure to accomplish the objectives of his representation of Martin.

### MLRPC 1.4 (Communication)

MLRPC 1.4 states:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in [MLRPC] 1.0(f), is required by [the MLRPC];

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the

lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the [MLRPC] or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.[6]

Clear and convincing evidence supports the hearing judge's conclusion that Ucheomumu violated MLRPC 1.4(a)(2). On November 20, 2014, the Court of Special Appeals issued an order to proceed, meaning that the transcripts of the relevant proceedings in the circuit court needed to be ordered by December 1, 2014. See Md. R. 8-411(b)(1) (2014), 1-203(a)(1). Ucheomumu did not inform Martin of the December 1, 2014 deadline. On December 8, 2014, Ucheomumu sent Martin a text message, requesting money to cover the cost of obtaining transcripts. Ucheomumu did not inform Martin that he had missed the December 1, 2014 deadline for ordering the transcripts. On February 2, 2015, the Court of Special Appeals issued an order directing Martin to show cause why the appeal should not be dismissed for failure to file the transcripts. Ucheomumu did not inform Martin of the show cause order, or advise her that the Court of Special Appeals would dismiss the appeal for failure to file the transcripts. By not advising Martin of the December 1, 2014 deadline, his failure to meet it, his failure's possible consequences, and the show cause order, Ucheomumu failed to keep Martin reasonably informed about the appeal's status.

---

[6]Without specifying a section, the hearing judge concluded that Ucheomumu violated MLRPC 1.4. The hearing judge stated that Ucheomumu violated MLRPC 1.4 "when he did not keep [] Martin reasonably informed[,]" "by failing to promptly comply with [] Martin's reasonable requests for information[,]" and "by failing to inform [] Martin about any additional hourly costs of his legal services outside of the original $10,500.00 flat fee[.]" These conclusions are consistent with violations of MLRPC 1.4(a)(2), 1.4(a)(3), and 1.4(b), respectively.

Clear and convincing evidence supports the hearing judge's conclusion that Ucheomumu violated MLRPC 1.4(a)(3). On two occasions, Martin requested a copy of the Motion for Extension, but she did not hear back from Ucheomumu. Subsequently, Martin requested that Ucheomumu provide copies of all of the documents that he had drafted on her behalf. Ucheomumu never did so.

Clear and convincing evidence supports the hearing judge's conclusion that Ucheomumu violated MLRPC 1.4(b). The Attorney Engagement Agreement stated that Ucheomumu would represent Martin in the appeal for a flat fee of $10,500, and that, if, "[a]fter starting the work," Ucheomumu's firm withdrew from the representation "due to any conflict," Martin would receive a refund on a "pro[ ]rata basis[,] or" her payments would be applied to "outstanding legal bills." The Attorney Engagement Agreement did not specify an hourly rate or explain how the amount of any "outstanding legal bills[,]" or the amount of any refund on "a pro[ ]rata basis[,]" would be calculated. After Martin terminated Ucheomumu's representation, sought a refund, and requested an accounting of all of the legal services that he had performed for her, he provided her with an invoice that indicated that she owed him $10,944.50 based on an hourly rate of $295. This was the first occasion on which Ucheomumu indicated that he would charge Martin an hourly rate. By failing to explain to Martin before the representation began that he would charge an hourly rate, and that he would charge more than the $10,500 flat fee, Ucheomumu failed to explain his manner of billing to the extent reasonably necessary to permit Martin to make an informed decision regarding whether to retain him.

## MLRPC 1.5(a) (Reasonable Fees) and 1.5(b) (Communication of Fees)

MLRPC 1.5 states in pertinent part:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.[7]

(Some paragraph breaks omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Ucheomumu violated MLRPC 1.5(a). Martin paid Ucheomumu a total of $6,200 to represent her in the appeal. The Court of Special Appeals dismissed the appeal due to Ucheomumu's failure to order the transcripts or advise Martin to do so. Ucheomumu did

---

[7]Without specifying a section, the hearing judge concluded that Ucheomumu violated MLRPC 1.5. Bar Counsel specifically charged Ucheomumu with violating—and, in the opinion, the hearing judge mentioned only—MLRPC 1.5(a) and 1.5(b). The hearing judge concluded that Ucheomumu charged "unreasonable" fees and "fail[ed] to fully communicate the basis or rate of his fees[,]" which constitute violations of MLRPC 1.5(a) and 1.5(b), respectively.

not draft a brief on Martin's behalf or appear at oral argument. Although Ucheomumu provided legal services pertaining to visitation with Martin's children, those were not a significant undertaking on his part. The $6,200 that Ucheomumu collected constituted an unreasonable fee.

Clear and convincing evidence supports the hearing judge's conclusion that Ucheomumu violated MLRPC 1.5(b). The conduct that constitutes a violation of MLRPC 1.4(b), which is discussed above, also constitutes a violation of MLRPC 1.5(b).

### MLRPC 1.15(a) and 1.15(c) (Safekeeping Property)

MLRPC 1.15 states in pertinent part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules[.]

* * *

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

Clear and convincing evidence supports the hearing judge's conclusions that Ucheomumu violated MLRPC 1.15(a) and 1.15(c). The Attorney Engagement Agreement stated that Ucheomumu's firm would "deposit any and all" payments "in [its] general operating account, and not in a trust account." Ucheomumu did not advise Martin to seek independent counsel to review the Attorney Engagement Agreement's statement that he would not deposit unearned funds into an attorney trust account. Ucheomumu failed to

obtain Martin's informed consent not to deposit unearned funds into an attorney trust account. Martin paid Ucheomumu a total of $6,200 in payments that he either failed to deposit into, or deposited and subsequently withdrew from, his attorney trust account. Ucheomumu never earned the $6,200; thus, he violated MLRPC 1.15(a) and 1.15(c) by failing to maintain that $6,200 in his attorney trust account.

### MLRPC 1.16(d) (Terminating Representation)

MLRPC 1.16(d) states:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another lawyer, surrendering papers and property to which the client is entitled[,] and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.[8]

Clear and convincing evidence supports the hearing judge's conclusion that Ucheomumu violated MLRPC 1.16(d). Ucheomumu never earned the $6,200 that Martin had paid him. Yet, after Martin terminated Ucheomumu's representation, he offered to refund only $1,200. Additionally, when Ucheomumu repeated his offer to refund $1,200, he conditioned the offer on Martin signing a release that would preclude her from suing him.

---

[8]Without specifying a section, the hearing judge concluded that Ucheomumu violated MLRPC 1.16. Given that Bar Counsel specifically charged Ucheomumu with violating, and the hearing judge quoted only, MLRPC 1.16(d), it is evident that the hearing judge concluded that Ucheomumu violated MLRPC 1.16(d).

**MLRPC 3.3(a)(1) (Candor Toward the Tribunal), 8.1(a) (Disciplinary Matters), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice)**

"A lawyer shall not knowingly[] make a false statement of fact or law to a tribunal[.]" MLRPC 3.3(a)(1). "[A] lawyer . . . in connection with a disciplinary matter[] shall not[] knowingly make a false statement of material fact[.]" MLRPC 8.1(a).[9] "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" MLRPC 8.4(c). "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Slate, 457 Md. at 645, 180 A.3d at 155 (cleaned up).

The hearing judge concluded that Ucheomumu violated MLRPC 3.3(a)(1) and 8.4(c) by falsely representing to the Court of Special Appeals that there had been a delay in ordering the transcripts because he had not received Martin's case file from her previous counsel. The hearing judge concluded that Ucheomumu violated MLRPC 8.1(a) and 8.4(c) by falsely representing to Bar Counsel that he had advised Martin to order the transcripts, that she had never paid him so that he could order the transcripts, and that the Court of Special Appeals had dismissed the appeal because Martin had failed to order the transcripts. The hearing judge concluded that Ucheomumu also violated MLRPC 8.4(c)

---

[9]Without specifying sections, the hearing judge concluded that Ucheomumu violated MLRPC 3.3 and 8.1. Given that Bar Counsel specifically charged Ucheomumu with violating, and the hearing judge quoted only, MLRPC 3.3(a)(1) and 8.1(a), it is evident that the hearing judge concluded that Ucheomumu violated MLRPC 3.3(a)(1) and 8.1(a).

by falsely representing to Martin that she was responsible for the appeal's dismissal. The hearing judge concluded that Ucheomumu violated MLRPC 8.4(d) through his "conduct toward" Martin, Bar Counsel, and the Court of Special Appeals. We uphold all of these conclusions.

Clear and convincing evidence supports the hearing judge's conclusions that Ucheomumu violated MLRPC 3.3(a)(1) and 8.4(c) by falsely representing to the Court of Special Appeals that there had been a delay in ordering the transcripts because he had not received Martin's case file from her previous counsel. On November 4, 2014, Ucheomumu e-mailed Martin's previous counsel in an attempt to obtain her case file. Ucheomumu believed that Martin's previous counsel had copies of the transcripts. Martin's previous counsel, however, never provided any documents to Ucheomumu. Ucheomumu never ordered the transcripts, never advised Martin to do so, and never filed a timely motion for extension of time to file the transcripts. As a result of Ucheomumu's inaction, the transcripts were not ordered by the December 1, 2014 deadline. On December 8, 2014, Ucheomumu sent Martin a text message, stating: "Shannan, how is your funding coming? **I need to order the transcript[s]** ASAP without any further delay." (Emphasis added). As the hearing judge explained, by stating that he "need[ed] to order the transcript[s]" himself, Ucheomumu indicated that, as of that date, he was no longer waiting for Martin's previous counsel to provide the transcripts. Almost two months later, on February 2, 2015, the Court of Special Appeals issued an order directing Martin to show cause why the appeal should not be dismissed for failure to file the transcripts. On February 27, 2015, Ucheomumu filed the Motion for Extension, in which, instead of acknowledging that he

was at fault for the failure to order the transcripts, he falsely represented that one of the reasons for the delay in ordering the transcripts was that Martin's previous counsel had not provided her case file. Whereas the truth was that Ucheomumu was responsible for ordering the transcripts—a fact that he had expressly acknowledged almost two months earlier—he instead blamed Martin's previous counsel for the failure to order the transcripts. As the hearing judge found, Ucheomumu "misled . . . the Court of Special Appeals . . . in an attempt to explain his failure to order the transcripts."

Clear and convincing evidence supports the hearing judge's conclusions that Ucheomumu violated MLRPC 8.1(a) and 8.4(c) by falsely representing to Bar Counsel that he had advised Martin to order the transcripts, that she had never paid him so that he could order the transcripts, and that the Court of Special Appeals had dismissed the appeal because she had failed to order the transcripts. Ucheomumu's first statement was false because he never advised Martin to order the transcripts. Ucheomumu's second statement was false because, on December 10, 2014, Martin paid him $3,000 for the purpose of covering the cost of obtaining the transcripts. Ucheomumu's third statement was false because he, not Martin, was responsible for both the failure to order the transcripts and the appeal's dismissal.

Clear and convincing evidence supports the hearing judge's conclusion that Ucheomumu violated MLRPC 8.4(c) by falsely representing to Martin that she was responsible for the appeal's dismissal. On March 30, 2015, Ucheomumu e-mailed to Martin the order in which the Court of Special Appeals dismissed the appeal, and he falsely stated: "[Y]ou have not paid for the transcripts[.]"

Clear and convincing evidence supports the hearing judge's conclusion that Ucheomumu violated MLRPC 8.4(d). Ucheomumu's false statements to Martin, Bar Counsel, and the Court of Special Appeals would certainly "negatively impact the perception of the legal profession of a reasonable member of the public." Slate, 457 Md. at 645, 180 A.3d at 155 (cleaned up).

**MLRPC 8.4(a) (Violating or Attempting to Violate the MLRPC) and 1.8(h)**
**(Conflict of Interest; Current Clients; Specific Rules)**

"It is professional misconduct for a lawyer to[] violate or attempt to violate the" MLRPC. MLRPC 8.4(a). MLRPC 1.8(h) states:

A lawyer shall not:

> (1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or

> (2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith.

Clear and convincing evidence supports the hearing judge's conclusion that Ucheomumu violated MLRPC 8.4(a) by violating other MLRPC. As discussed above, Ucheomumu violated MLRPC 1.1, 1.2(a), 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.5(a), 1.5(b), 1.15(a), 1.15(c), 1.16(d), 3.3(a)(1), 8.1(a), 8.4(c), and 8.4(d).

The hearing judge also concluded that Ucheomumu violated MLRPC 8.4(a) by attempting to violate MLRPC 1.8(h)(1) and MLRPC 1.8(h)(2). We reverse these conclusions.

After Martin terminated Ucheomumu's representation and hired new counsel to

- 33 -

represent her in the appeal, Ucheomumu e-mailed Martin and her new counsel, offering to refund her $1,200 on the condition that she would sign a release that was attached to the e-mail, and that would preclude her from suing him. Ucheomumu did not advise Martin in writing to seek independent counsel to review the release, but mailed the written release to Martin and her new counsel.

These circumstances do not constitute clear and convincing evidence of an attempt to violate MLRPC 1.8(h)(1). Ucheomumu e-mailed the release to both Martin and her new counsel. To be sure, the hearing judge found that Martin retained new counsel to represent her in the appeal—not to represent her in her dealings with Ucheomumu. That said, the hearing judge did not find that Martin's new counsel did not or could not review, and/or advise her regarding, the release.

As to MLRPC 1.8(h)(2), Ucheomumu e-mailed the release to Martin and her new counsel, and Martin testified that Ucheomumu orally advised her to discuss the release with her new counsel. Although Ucheomumu did not advise Martin in writing of the desirability of consulting with independent legal counsel about the release, under these circumstances, we decline to find an attempted violation of MLRPC 1.8(h)(2).

### (D) Sanction

Bar Counsel recommends that we disbar Ucheomumu, who does not expressly recommend a sanction in the event that we deny his requests to dismiss this attorney discipline proceeding or remand for a new hearing.

In Slate, 457 Md. at 646-47, 180 A.3d at 155-56, this Court stated:

This Court sanctions a lawyer not to punish the lawyer, but instead to protect

- 34 -

the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

(Cleaned up).

In Attorney Grievance Comm'n v. Aita, 458 Md. 101, 140, 134-35, 139, 181 A.3d

774, 796, 795, 792-93 (2018), this Court unanimously disbarred Anna Aita, who violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.5(a), 1.15(a), 1.15(c), 1.15(d), 1.16(d), 3.3(a)(1), 8.4(c), and 8.4(d), and former Maryland Rules 16-604 (Trust Account— Required Deposits) and 16-606.1 (Attorney Trust Account Record-Keeping). Aita represented two clients in separate immigration cases. See id. at 108, 181 A.3d at 777. Aita failed to deposit unearned funds from both clients into an attorney trust account. See id. at 110, 113, 181 A.3d at 779, 781.

In the first immigration case, Aita filed an application for cancellation of removal. See id. at 110, 181 A.3d at 779. Aita's client provided documents that would have supported the application, but she failed to file them. See id. at 110, 118, 181 A.3d at 779, 783. After a hearing was scheduled, Aita failed to inform her client of the hearing. See id. at 122, 181 A.3d at 785. Neither Aita nor her client attended the hearing; Aita arranged for another lawyer, who knew nothing about the first immigration case, to substitute for her. See id. at 122, 118, 181 A.3d at 785, 783. An Immigration Court ordered Aita's client removed from the United States. See id. at 111, 181 A.3d at 779. Aita's client sent her two text messages, to which she failed to respond. See id. at 111, 181 A.3d at 779. On her client's behalf, Aita filed a motion to reopen in which she falsely represented that her client failed to appear at the hearing because his car broke down. See id. at 112, 181 A.3d at 780. The Immigration Court granted the motion to reopen and scheduled another hearing. See id. at 112, 181 A.3d at 780. Aita failed to inform her client of the second hearing, which neither she nor her client attended. See id. at 112, 181 A.3d at 780. Once again, the Immigration Court ordered Aita's client removed from the United States. See id. at 112,

181 A.3d at 780. Aita's client's partner paid her to file a second motion to reopen, but she never did so. See id. at 112, 181 A.3d at 780. Aita's client retained new counsel, to whom she did not provide her client's case file until after Bar Counsel requested that she do so. See id. at 112-13, 181 A.3d at 780.

In the second immigration case, Aita's client retained her to file an application for suspension of removal, and to represent her at a hearing. See id. at 113, 181 A.3d at 780-81. Aita, however, never filed anything on her client's behalf, and failed to attend the hearing; Aita arranged for another lawyer, who knew nothing about the second immigration case, to substitute for her. See id. at 114-15, 181 A.3d at 781.

This Court noted nine aggravating factors: a dishonest or selfish motive; a pattern of misconduct; multiple violations of the MLRPC; submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; a refusal to acknowledge the misconduct's wrongful nature; the victims' vulnerability; substantial experience in the practice of law; indifference to making restitution or rectifying the misconduct's consequences; and likelihood of repetition of the misconduct. See id. at 139, 181 A.3d at 795. This Court noted two mitigating factors: the absence of prior attorney discipline, and character or reputation. See id. at 139, 181 A.3d at 795.

Here, Ucheomumu violated MLRPC 1.1, 1.2(a), and 1.3 by never ordering the transcripts, never advising Martin to do so, and not filing a timely motion for extension of time to file the transcripts. Ucheomumu violated MLRPC 1.4(a)(2) by not advising Martin of the deadline for ordering the transcripts, his failure to meet it, his failure's possible consequences, and the show cause order. Ucheomumu violated MLRPC 1.4(a)(3) by

failing to comply with Martin's requests for copies of certain documents. Ucheomumu violated MLRPC 1.4(b) and 1.5(b) by failing to communicate that he would charge an hourly rate. Ucheomumu violated MLRPC 1.5(a) by collecting, and failing to earn, the $6,200 that Martin paid him. Ucheomumu violated MLRPC 1.15(a) and 1.15(c) by failing to deposit unearned funds into, and withdrawing unearned funds from, his attorney trust account. Ucheomumu violated MLRPC 1.16(d) by failing to refund unearned funds and attempting to get Martin to sign the release that would preclude her from suing him. Ucheomumu violated MLRPC 3.3(a)(1), 8.4(c), and 8.4(d) by falsely representing to the Court of Special Appeals that there had been a delay in ordering the transcripts because he had not received Martin's case file from her previous counsel. Ucheomumu violated MLRPC 8.1(a), 8.4(c), and 8.4(d) by falsely representing to Bar Counsel that he had advised Martin to order the transcripts, that she had never paid him so that he could order the transcripts, and that the Court of Special Appeals had dismissed the appeal because Martin had failed to order the transcripts. Ucheomumu violated MLRPC 8.4(c) and 8.4(d) by falsely representing to Martin that she was responsible for the appeal's dismissal.

The hearing judge found that Ucheomumu's misrepresentations to Martin and Bar Counsel were "knowing and intentional[,]" and that he made "a knowingly false statement of fact" to the Court of Special Appeals. Ucheomumu's misconduct injured Martin, in that he caused the appeal's dismissal. Notably, Martin's new counsel's attempts to salvage the appeal were unsuccessful; Martin's new counsel filed a Motion to Reinstate, which the Court of Special Appeals denied, and then filed a petition for a writ of *certiorari*, which this Court denied. Thus, because of Ucheomumu, Martin lost the opportunity to challenge

- 38 -

on appeal an order that was unfavorable to her in a child custody case.

We note seven aggravating factors. First, Ucheomumu has prior attorney discipline. Although the discipline was imposed after the events that underlie this case, the prior misconduct that resulted in that discipline occurred before the misconduct in this case. Just two years ago, in Attorney Grievance Comm'n v. Ucheomumu, 450 Md. 675, 717, 150 A.3d 825, 849-50 (2016), this Court unanimously indefinitely suspended Ucheomumu from the practice of law in Maryland with the right to apply for reinstatement after ninety days, with reinstatement conditioned on him "provid[ing] the Attorney Grievance Commission and Bar Counsel with appropriate documentation showing the existence and maintenance of an attorney trust account." To date, Ucheomumu has not been reinstated.

In Ucheomumu, id. at 701-12, 150 A.3d at 840-47, this Court concluded that Ucheomumu violated MLRPC 1.1 (Competence), 1.4(b) (Communication), 1.5(a) (Unreasonable Fees), 1.15(a), 1.15(c) (Safekeeping Property), 1.16(d) (Termination of Representation), 3.1 (Meritorious Claims and Contentions), 3.4(a), 3.4(d) (Fairness to Opposing Party and Counsel), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), former Maryland Rules 16-604 (Trust Account—Required Deposits) and 16-606.1 (Attorney Trust Account Record-Keeping), and Md. Code Ann., Bus. Occ. & Prof. (1989, 2010 Repl. Vol.) § 10-306 (Trust Money Restrictions).

Ucheomumu's facts are as follows. In July 2010, an individual asked Ucheomumu to represent an LLC that he controlled. See id. at 685, 150 A.3d at 831. Ucheomumu drafted a retainer agreement, which the individual signed on the LLC's behalf. See id. at 685, 150 A.3d at 831. The retainer agreement stated that the LLC would pay Ucheomumu

a nonrefundable retainer in the amount of $10,000, and that he would bill the LLC $195 an hour. See id. at 686, 150 A.3d at 831.

From July 2010 through December 2012, Ucheomumu performed various legal services for the individual and two LLCs that he controlled. See id. at 686-87, 150 A.3d at 831-32. During this timeframe, Ucheomumu did not maintain an attorney trust account. See id. at 686, 150 A.3d at 831. Ucheomumu deposited all of the individual's and the LLCs' payments into his general bank account. See id. at 686-87, 150 A.3d at 831-32. The payments included funds that were earmarked for third parties, such as other lawyers. See id. at 687, 150 A.3d at 832. Aside from his bank records and a single invoice, Ucheomumu did not keep contemporaneous records of the individual's and the LLCs' payments. See id. at 686, 150 A.3d at 831.

On behalf of one of the LLCs, Ucheomumu filed a complaint against a company that had paid the LLC an advance fee for a loan, not received any funds from the LLC, unsuccessfully sought a refund of the advance fee, and then allegedly falsely accused the LLC of mishandling the loan. See id. at 689, 150 A.3d at 833. Ucheomumu did not conduct any "pertinent factual investigation before filing the complaint." Id. at 689, 150 A.3d at 833. Ucheomumu failed to appear at a pretrial conference, and was sanctioned. See id. at 689, 150 A.3d at 833. Ucheomumu responded to discovery requests with frivolous objections, and was again sanctioned. See id. at 689-90, 150 A.3d at 833. The individual who controlled the LLCs requested invoices and a complete copy of his file, which Ucheomumu failed to provide. See id. at 692, 150 A.3d at 835.

Significantly, in Ucheomumu, id. at 686-87, 150 A.3d at 831-32, Ucheomumu's

- 40 -

misconduct occurred between July 2010 and December 2012, which was nearly two years before November 2014, when he began engaging in the misconduct that gave rise to this attorney discipline proceeding. As such, Ucheomumu's instant misconduct was not an aberration; instead, it was simply the latest in a pattern of misconduct that has spanned multiple years.

That brings us to the second, third, and fourth aggravating factors—namely, that Ucheomumu committed multiple violations of the MLRPC, demonstrated a pattern of misconduct, and is likely to repeat his misconduct. Both in this attorney discipline proceeding and in Ucheomumu, id. at 701-12, 150 A.3d at 840-47, Ucheomumu violated MLRPC 1.1, 1.4(b), 1.5(a), 1.15(a), 1.15(c), 1.16(d), and 8.4(d). Given that Ucheomumu has violated all of these MLRPC on two occasions, it is likely that he would continue to do so if given the opportunity.

Fifth, sixth, and seventh, Ucheomumu had selfish motives, refused to acknowledge his misconduct's wrongful nature, and showed indifference to making restitution. Martin retained Ucheomumu to represent her in the appeal, and paid him a total of $6,200. Ucheomumu caused the appeal's dismissal by failing to order the transcripts. Thus, Ucheomumu never earned the $6,200 that Martin had paid him. But, after Martin terminated Ucheomumu's representation, he did not refund the $6,200. Instead, on two occasions, Ucheomumu offered to refund only $1,200—and his second offer was conditioned on Martin signing a release that would preclude her from suing him. In other words, despite having engaged in inaction that ultimately caused the appeal's dismissal, Ucheomumu attempted to permanently deprive Martin of $5,000 of the $6,200 that she had

paid him, as well as any amount that she could recover by suing him. And, after the Court of Special Appeals dismissed the appeal, Ucheomumu misrepresented to Martin that she was responsible for the appeal's dismissal, when, in fact, it was his fault. By offering a negligible refund and falsely blaming Martin for his own mistakes, Ucheomumu showed indifference to making restitution, refused to acknowledge his misconduct's wrongful nature, and demonstrated that he had the selfish motives of keeping unearned funds and deflecting blame for the appeal's dismissal.[10]

The hearing judge reasoned that Ucheomumu's misconduct was mitigated by his "provision of some legal services [that were] related to" visitation with Martin's children. Although this circumstance does not correspond to any of the mitigating factors that this Court or the American Bar Association has recognized, see Slate, 457 Md. at 647, 180 A.3d at 156; American Bar Association's Standard for Imposing Lawyer Sanctions 9.32, we accept the hearing judge's finding.[11] As to other mitigating factors, although Ucheomumu

---

[10]Unlike the hearing judge, we do not determine that Ucheomumu's misconduct is aggravated by false statements during this attorney discipline proceeding. Rather than constituting a factor that aggravates his misconduct, Ucheomumu's misrepresentations to Bar Counsel are themselves instances of misconduct—namely, violations of MLRPC 8.1(a), 8.4(c), and 8.4(d).

[11]Although we accept the hearing judge's finding that Ucheomumu's misconduct is mitigated by his provision of legal services related to visitation with Martin's children, we give this mitigating factor little weight. The Attorney Engagement Agreement stated that Ucheomumu would represent Martin in the appeal for $10,500. The Attorney Engagement Agreement did not contemplate that Ucheomumu would provide legal services related to visitation with Martin's children. After Martin terminated Ucheomumu's representation, he provided her with an invoice that indicated that she owed him $10,944.50 based on an hourly rate of $295. As discussed above in our analysis of Ucheomumu's exceptions to the hearing judge's findings of fact, given that he could not have provided Martin with more than $10,500's worth of legal services in the appeal—as he never ordered transcripts (Continued...)

became a lawyer in 2009 and "was a newly admitted attorney at the time of" his misconduct from 2010 to 2012 in Ucheomumu, 450 Md. at 714, 150 A.3d at 848, he had been a member of the Bar of Maryland for more than five years at the time of the 2014 misconduct that gave rise to this attorney discipline proceeding. Thus, the mitigating factor of inexperience in the practice of law does not apply. Although the hearing judge in Ucheomumu expressly found credible testimony about Ucheomumu's character, see id. at 715, 150 A.3d at 848, the hearing judge in this attorney discipline proceeding made no findings about his character. Thus, the mitigating factor of good character is not applicable. Finally, we disagree with Ucheomumu to the extent that he contends that his misconduct is mitigated by delay in this attorney discipline proceeding because of "Martin's inability to recall events that [had] happened almost four years earlier[.]" Martin's recollection was sufficient for the hearing judge to make detailed findings of fact regarding Ucheomumu's misconduct.

We agree with Bar Counsel that disbarment is the appropriate sanction for Ucheomumu's misconduct. "Disbarment follows as a matter of course[] when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating[,] or like conduct, absent the most compelling extenuating circumstances[.]"

---

of the circuit court proceedings, filed briefs, or appeared at any oral argument—he necessarily billed her for legal services that were not related to his representation of her in the appeal. Because Ucheomumu evidently attempted to charge Martin for legal services that were related to visitation with her children, and that were not mentioned in the Attorney Engagement Agreement, his provision of those legal services does little to mitigate his misconduct. That said, in an appropriate case, a lawyer's provision of legal services, above and beyond what a retainer agreement requires him or her to provide, might constitute a mitigating factor that is entitled to more than minimal weight.

Attorney Grievance Comm'n v. Peters-Hamlin, 447 Md. 520, 544-45, 136 A.3d 374, 388 (2016) (cleaned up). After failing to order the transcripts, Ucheomumu falsely represented to the Court of Special Appeals that Martin's previous counsel was to blame for the delay in ordering the transcripts, and he falsely represented to Martin and Bar Counsel that she was to blame. Ucheomumu made these misrepresentations because he had the selfish motive of keeping the $6,200 that Martin had paid him. In other words, Ucheomumu was "willfully dishonest for personal gain[.]" Id. at 545, 136 A.3d at 388 (citation omitted).

As this Court has repeatedly stated, "[h]onesty and dishonesty are, or are not, present in an attorney's character." Attorney Grievance Comm'n v. Smith, 457 Md. 159, 223, 177 A.3d 640, 678 (2018) (quoting Attorney Grievance Comm'n v. Vanderlinde, 364 Md. 376, 418, 773 A.2d 463, 488 (2001)). Ucheomumu made false statements to Martin, Bar Counsel, and the Court of Special Appeals. Tellingly, in an e-mail to Martin, Ucheomumu stated: "I specifically did not want to let the Court of Special Appeals know that you have not paid for the transcripts because it is my duty to protect you." Ucheomumu's statement that Martin had "not paid for the transcripts" was false because she had paid him $3,000 for the purpose of covering the cost of obtaining the transcripts. Even more importantly, Ucheomumu's statement about "not want[ing] to let the Court of Special Appeals know" about a significant purported fact reflects a striking willingness to deceive a court.

Given the absence of significant mitigating factors, much less "compelling extenuating circumstances[,]" Peters-Hamlin, 447 Md. at 545, 136 A.3d at 388 (cleaned up), Ucheomumu's multiple false statements, without more, would justify disbarment. It

is even clearer that disbarment is the appropriate sanction when we take into account Ucheomumu's various other forms of misconduct, including failures of competence, diligence, and communication, collecting an unreasonable fee, and failing to maintain unearned funds in an attorney trust account. Worse still, there are seven aggravating factors, including prior attorney discipline, a pattern of misconduct, and likelihood of repetition of misconduct. Considered together, all of these circumstances merit disbarment.

Ucheomumu's misconduct is similar to that of Aita, whom this Court unanimously disbarred. See Aita, 458 Md. at 140, 181 A.3d at 796. Both lawyers failed to perform extremely simple tasks; Ucheomumu failed to order transcripts, and Aita failed to inform her client of a hearing. See id. at 122, 181 A.3d at 785. Afterward, both lawyers filed motions in which they lied in attempts to cover up their mistakes; Ucheomumu filed a Motion for Extension in which he blamed Martin's previous counsel for the delay in ordering the transcripts, and Aita filed a motion to reopen in which she blamed car trouble for her client's failure to appear at the hearing. See id. at 112, 181 A.3d at 780. Both lawyers' inaction resulted in the worst possible outcomes in their clients' cases; Ucheomumu's inaction caused the appeal's dismissal, and Aita's inaction caused the Immigration Court to order her client removed from the United States. See id. at 111-12, 181 A.3d at 779-80. Both lawyers failed to protect their clients' interests after the representations terminated; Ucheomumu failed to refund the $6,200 that Martin had paid him, and Aita did not provide her client's case file to his new counsel until after Bar Counsel requested that she do so. See id. at 113, 181 A.3d at 780. Both lawyers failed to

file important documents that their clients had retained them to file; Ucheomumu never drafted a brief on Martin's behalf, and Aita failed to file an application for suspension of removal. See id. at 113-14, 181 A.3d at 780-81. Both lawyers charged fees that were unreasonable in light of their failure to file important documents. See id. at 135, 181 A.3d at 793. Both lawyers failed to maintain unearned funds in an attorney trust account. See id. at 110, 113, 181 A.3d at 779, 781. And, both lawyers failed to keep their clients reasonably informed about the status of their cases, failed to respond to their clients' requests for updates about their cases, and failed to properly communicate matters to their clients. See id. at 134, 181 A.3d at 792-93.

Significantly, with the exception of MLRPC 1.15(d), Ucheomumu violated all of the MLRPC that Aita did—namely, MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.5(a), 1.15(a), 1.15(c), 1.16(d), 3.3(a)(1), 8.4(c), and 8.4(d). See id. at 134-35, 139, 181 A.3d at 795, 792-93. In addition, unlike Aita, Ucheomumu violated MLRPC 1.2(a), 1.5(b), and 8.1(a).

To be sure, Aita's misconduct involved two clients, see id. at 108, 181 A.3d at 777, whereas Ucheomumu's misconduct involves one client. Aita violated MLRPC 1.15(d) and former Maryland Rules 16-604 and 16-606.1, see id. at 139, 181 A.3d at 795, whereas Ucheomumu did not. And, there were nine aggravating factors in Aita, id. at 139, 181 A.3d at 795, whereas there are seven aggravating factors here. That said, this attorney discipline proceeding's circumstances warrant disbarment just as Aita's did. Whereas Aita lied only to an immigration court, see id. at 136, 181 A.3d at 794, Ucheomumu lied to Martin, Bar Counsel, and the Court of Special Appeals. Unlike Aita, Ucheomumu failed to properly

communicate how he would charge fees. And, whereas Aita had no prior attorney discipline, see id. at 139, 181 A.3d at 795, this Court has unanimously indefinitely suspended Ucheomumu from the practice of law in Maryland with the right to apply for reinstatement after ninety days, with reinstatement conditioned on him "provid[ing] the Attorney Grievance Commission and Bar Counsel with appropriate documentation showing the existence and maintenance of an attorney trust account[,]" Ucheomumu, 450 Md. at 717, 150 A.3d at 849-50.

A continuation of Ucheomumu's existing indefinite suspension would be an inadequate sanction because his instant misconduct is more egregious than his previous misconduct. In Ucheomumu, id. at 683-84, 712, 150 A.3d at 830, 847, Bar Counsel did not charge Ucheomumu with violating MLRPC 3.3, and this Court concluded that he did not violate MLRPC 8.4(c); by contrast, here, Ucheomumu violated both MLRPC 3.3(a)(1) and 8.4(c) by lying to Martin, Bar Counsel, and the Court of Special Appeals. In Ucheomumu, id. at 716, 150 A.3d at 849, other than stating that Ucheomumu had "engaged in serious, wide-ranging misconduct, and violated numerous MLRPC, two Maryland Rules, and one provision of the Code of Maryland[,]" this Court did not specifically note any aggravating factors; by contrast, here, there are seven aggravating factors, including selfish motives, a refusal to acknowledge the misconduct's wrongful nature, and likelihood of repetition of the misconduct.

We agree with Assistant Bar Counsel's assertion at oral argument that this attorney discipline proceeding is distinguishable from Attorney Grievance Comm'n v. Hecht, 459 Md. 133, 158, 148-55, 184 A.3d 429, 444, 438-42 (2018), in which this Court indefinitely

suspended from the practice of law in Maryland, with the right to apply for reinstatement after twelve months, Ross Hecht, who violated MLRPC 1.1, 1.3, 1.4(a), 1.4(b), 1.16(a), 1.16(d), 3.2, 3.3, 3.4(d), 4.1, 5.5(a), 5.5(b), 8.1(a), 8.4(b), 8.4(c), and 8.4(d). In a civil case, Hecht filed a complaint on behalf of two clients, who were friends with his wife. See id. at 139, 158, 184 A.3d at 433, 444. In a separate attorney discipline proceeding, with his consent, this Court suspended Hecht from the practice of law in Maryland with the right to apply for reinstatement after six months. See Attorney Grievance Comm'n v. Hecht, 431 Md. 443, 66 A.3d 46 (2013). Hecht shut down his law practice and e-mailed his two clients about his suspension, but he was uncertain of whether they received the e-mail. See Hecht, 459 Md. at 139-40, 184 A.3d at 433.

Months later, Hecht learned that his clients had not retained new counsel or responded to the opposing party's discovery requests, which upset and worried Hecht. See id. at 140, 184 A.3d at 433. One of Hecht's clients asked about the case's status; in response, Hecht did not disclose his suspension, but provided the name of another lawyer and suggested that she meet him to determine whether he could serve as the clients' new counsel. See id. at 140, 184 A.3d at 433. Hecht made three additional unsuccessful attempts to secure new counsel for his clients. See id. at 144, 184 A.3d at 436. Meanwhile, Hecht drafted discovery documents, e-mailed them to opposing counsel, and attended proceedings—though he sat in the gallery, did not cross the bar of the courtroom, and did not address the trial court. See id. at 140-44, 184 A.3d at 433-35.

Opposing counsel scheduled a deposition of Hecht's clients, one of whom informed Hecht that she was unavailable on the scheduled date. See id. at 144, 184 A.3d at 435.

Hecht failed to inform opposing counsel of his client's unavailability until after the deposition was scheduled to begin. See id. at 144, 184 A.3d at 435. The opposing party filed a motion to dismiss, which the trial court granted. See id. at 144, 184 A.3d at 435-36. Hecht paid his clients $30,000 as restitution for the case's dismissal. See id. at 144, 184 A.3d at 436. Hecht acknowledged his mistakes, and was remorseful for them. See id. at 144, 184 A.3d at 436. Multiple character witnesses, including two circuit court judges, testified that Hecht was competent and truthful. See id. at 144-45, 184 A.3d at 436.

For various reasons, Hecht is materially distinguishable from this attorney discipline proceeding. In Hecht, 459 Md. at 157, 184 A.3d at 443, there were only four aggravating factors: prior attorney discipline, multiple violations of the MLRPC, a pattern of misconduct, and substantial experience in the practice of law. By contrast, here, there are seven aggravating factors: prior attorney discipline, multiple violations of the MLRPC, a pattern of misconduct, likelihood of repetition of misconduct, selfish motives, a refusal to acknowledge the misconduct's wrongful nature, and indifference to making restitution.

While there were "several mitigating factors" in Hecht, id. at 158, 184 A.3d at 443, there is only one here. Indeed, in many respects, Hecht and this attorney discipline proceeding are the exact opposite with regard to mitigating factors. Whereas the lawyer in Hecht "repeatedly admitted that he made mistakes" and "expressed remorse for" them, id. at 158, 184 A.3d at 443-44, Ucheomumu has refused to acknowledge his misconduct's wrongful nature. Whereas Hecht "did not profit from [his clients'] case," id. at 158, 184 A.3d at 444, Ucheomumu collected from Martin $6,200 that he never earned or refunded. Whereas Hecht paid his clients "$30,000 of his own money as restitution" after the trial

court dismissed their case, <u>id.</u> at 158, 184 A.3d at 444, Ucheomumu showed indifference to making restitution after he caused the appeal's dismissal. Whereas Hecht "made numerous unsuccessful efforts to get new counsel to represent" his clients, <u>id.</u> at 158, 184 A.3d at 444, the only attempt that Ucheomumu made to remedy his failure to order the transcripts was to file an untimely Motion for Extension in which he lied to the Court of Special Appeals. And, whereas Hecht made a "wrong decision, predicated on worry and a sense of loyalty for his wife's friends," <u>id.</u> at 158, 184 A.3d at 444, Ucheomumu failed to complete an extremely simple task—namely, ordering the transcripts—and then lied to Martin, Bar Counsel, and the Court of Special Appeals in an attempt to deflect the blame for his mistake.

In light of all of these significant differences between <u>Hecht</u> and this attorney discipline proceeding, <u>Hecht</u> furnishes no support for the proposition that Ucheomumu's many serious violations of the MLRPC warrant a sanction that is less than disbarment. Given Ucheomumu's multiple misrepresentations and other serious misconduct, and the seven aggravating factors, disbarment is warranted and necessary to protect the public.

For the above reasons, we disbar Ucheomumu.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ANDREW NDUBISI UCHEOMUMU.**